# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

VALERIE JADDO, Individually and as Administrator of the Estate of STEVEN BARRIER Jr., Deceased, on behalf of the Estate and Next of Kin, and the CONNECTICUT LEGAL RIGHTS PROJECT, INC.,

Plaintiffs,

-against-

SERGEANT MICHAEL CONNELLY, OFFICER RHETT CONNELLY, OFFICER TROY C. JUDGE, LIEUTENANT DOUGLAS R. DIESO, and THE TOWN AND CITY OF STAMFORD, CONNECTICUT,

Defendants.

Civil Action No.:
3:21-cv-00350 (MPS)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THE CROSS MOTION TO CONSOLIDATE DEFENDANTS' RULE 12 MOTIONS AND IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE, MOTION FOR MORE DEFINITE STATEMENT, AND RENEWED MOTION TO DISMISS

Alan L. Fuchsberg
THE JACOB D. FUCHSBERG LAW FIRM, LLP
3 Park Avenue, 37th Floor
New York, NY 10016
(212) 869-3500

Kelly A. Fitzpatrick
KOSKOFF, KOSKOFF & BIEDER PC
350 Fairfield Avenue
Bridgeport, CT 06604
(203) 336-4421

*Attorneys for Plaintiffs*

Plaintiffs respectfully request oral argument on Defendants' underlying Rule 12 Motions as well as Plaintiffs' Cross-Motion pursuant to District's local rule (7)(a)(2).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………...….iv

INTRODUCTION .…………………….….…………...…...…….….……....1

PROCEDURAL POSTURE …………….……...…..…….……..........……………….7

ARGUMENT .……………………………….…...…….……....................................7

I.      Defendants' Motions under Rules 12(e), (f), and (b) must be consolidated and considered in conjunction .……………………………………………………..7

II.     Defendant's Motions under Rules 12(e) and (f) must be summarily denied in part to the extent Defendants seek to raise objections or defenses that should have been but were not raised in their prior Rule 12(b) Motion .………………….…9

        a.   Defendants' assertion that Plaintiffs' references to certain documents or portions of documents in the Complaint should be stricken must be rejected...............................................................................................10

        b.   Defendants' assertion that Plaintiffs' references to Ms. Jaddo's individual claim should be stricken must be rejected………………………….….10

        c.   Defendants' assertion that Plaintiffs need to provide more definite statement instead of incorporating by reference other parts of the Complaint must be rejected……………………………………………………….....11

        d.   Defendants' objections to certain paragraphs of the Amended Complaint as not simple, concise, and direct must be rejected…………………………..12

III.    Even if this Court were to find that Rule 12(g) does not preclude Defendants' 12(e) and 12(f) Motions, the Court should still deny the Motion for substantive reasons .……………….….....................................................……………..........13

        a.   Defendants' motion to strike reference to various items from the Amended Complaint should be denied as these items have strong bearing on the issues in the case, contain admissible evidence, and are not prejudicial to the Defendants………………………………………………….…………13

        b.   Defendants' attempts to strike certain other allegation from the Complaint should be similarly rejected……………………………………………….....17

        c.   Defendants' motion for a more definite statement should be denied as Amended Complaint is sufficiently clear to allow Defendants to reasonably prepare a response………………………………………...…………………18

            i.   *Plaintiffs' incorporation of previous paragraphs in each Count*...…..19

         ii.    *Plaintiffs' purported allusion to claims not set out in any Count*…...21

        iii.   *Plaintiffs' reference to unidentified officers*…………………...……23

        iv.   *Plaintiffs' reference to Ms. Jaddo's individual claims and reference to "Plaintiffs" as a purportedly unidentified group*……………...…..24

IV.    If this Court were to allow consolidation of Defendants' Rule 12 Motions, the Court should deny Defendants' renewed Rule 12(b) Motion………………...…25

    a.   Plaintiff Ms. Jaddo has brought a cognizable claim against Defendant City under ADA and RA……………………………………………………..……26

    b.   Plaintiff CLRP has organizational standing to seek injunctive and declaratory relief to rectify Defendant's unconstitutional and unlawful actions……...…33

CONCLUSION …………………………………………………………………………...…..39

# TABLE OF AUTHORITIES

**Cases**

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............ 26

Boothe v. TRW Credit Data, 523 F. Supp. 631 (S.D.N.Y. 1981)............................................. 18, 21

Brunette v. City of Burlington, Vermont, 2018 WL 4146598 (D. Vt. Aug. 30, 2018) ................ 22

Cabble v. Rollieson, 2006 WL 464078 (S.D.N.Y. Feb. 24, 2006) .............................................. 14

Centro de la Centro De La. Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 868
 F.3d 104 (2d Cir. 2017).................................................................................................... 33, 37

Columbia Ins. Co. v. Brown Shoe Co., 233 F.R.D. 250 (D. Conn. 2005)................................... 18

Comprehensive Inv. Servs. v. Mudd (In re Fannie Mae 2008 Sec. Litig.), 891 F. Supp. 2d 458
 (S.D.N.Y. 2012) ...................................................................................................................... 14

Crespo v. N.Y. City Transit Auth., 2002 WL 398805 (E.D.N.Y. Jan. 4, 2002)........................... 13

Ctr. for Food Safety v. Price, 2018 WL 4356730 (S.D.N.Y. Sept. 12, 2018) ............................. 38

DeDandrade v. U.S. Dep't of Homeland Sec, 367 F. Supp. 3d 174 (S.D.N.Y. 2019) ........... 37, 38

Fair Hous. Just. Ctr., Inc. v. Edgewater Park Owners Coop., Inc., 2012 WL 762323 (S.D.N.Y.
 Mar. 8, 2012).......................................................................................................................... 35

Felix v. City of N.Y., 344 F. Supp. 3d 644 (S.D.N.Y. 2018) .................................................. 28, 29

Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp., 388 F. Supp. 3d 145 (E.D.N.Y.
 2019)........................................................................................................................................ 35

Fra S.P.A. v. Surg-O-Flex of Am., Inc., 415 F. Supp. 421 (S.D.N.Y. 1976) ................................ 8

Fulton v. Goord, 591 F.3d 37 (2d Cir. 2009) .............................................................................. 27

Hargrave v. Vermont, 340 F.3d 27 (2d Cir. 2003) ...................................................................... 27

Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) .......... 33

Interworks Sys. v. Merch. Fin. Corp., 604 F.3d 692 (2d Cir. 2010)........................................... 26

Irish Gay & Lesbian Org. v. Giuliani, 143 F.3d 638 (2d Cir. 1998) ........................................... 33

Katsetos v. Nolan, 170 Conn. 637 (Conn. 1976)........................................................................ 24

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992) ........................................................... 11, 18

Lawtone-Bowles v. City of N.Y., 2017 WL 4250513 (S.D.N.Y. Sept. 22, 2017) ...................... 26

Lennon v. Seaman, 63 F. Supp. 428 (S.D.N.Y. 1999)................................................................. 11

Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976) ........................................ 13

Lynch v. Southampton Animal Shelter Found., Inc., 278 F.R.D. 55 (E.D.N.Y. 2011)......... passim

Martin v. Brady, 261 Conn. 372, 802 A.2d 814 (Conn. 2002) ................................................... 22

Mayor & Council of Balt. v. Citigroup, Inc., 709 F.3d 129 (2d Cir. 2013)................................. 26

N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286 (2d Cir. 2011)...................... 34

N.Y. State Citizens' Coal. for Children v. Velez, 629 Fed. Appx. 92 (2d Cir. 2015) ................. 34

Nnebe v. Daus, 644 F.3d 147 (2d Cir. 2011)............................................................................... 34

*Oliver v. New York State Police*, 2019 WL 453363 (W.D.N.Y. Feb. 5, 2019) .......................... 21

Olsen v. Stark Homes, Inc., 759 F.3d 140 (2d Cir. 2014) .......................................................... 35

Patrick Dev., Inc. v. VIP Restoration, Inc., 2010 WL 447390 (W.D.N.Y. Feb. 2, 2010) ........... 20

Powers-Barnhard v. Butler, 2021 WL 105752 (N.D.N.Y. Jan. 12, 2021)...................... 8, 9, 18, 20

Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993) ................................. 34, 37

Reyes v. Galpin, 2019 WL 959680 (D. Conn. Feb. 27, 2019) .............................................. 28, 30
Reyes v. Town of Thomaston, 2020 WL 5849529 (D. Conn. Sept. 30, 2020).......... 28, 29, 30, 32
Smith v. AVSC Intern., Inc., 148 F.Supp.2d 302 (S.D.N.Y.2001)......................................... 15
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ................. 21
Tardif v. City of N.Y., 991 F.3d 394 (2d Cir. 2021)....................................... 29, 30, 31
Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 (2d Cir. 2003) ........................................ 28
Tucker v. Am. Int'l Grp., Inc., 936 F. Supp. 2d 1 (D. Conn. 2013) ...................................... 13
Velez v. Lisi, 164 F.R.D. 165 (S.D.N.Y. 1995)......................................................... 15, 18
Wallett v. Anderson, 198 F.R.D. 20 (D. Conn. 2000) ......................................................... 22
Williams v. City of N.Y., 121 F. Supp. 3d 354 (S.D.N.Y. 2015).......................................... 31
Wis. Province of Soc'y of Jesus v. Cassem, 2018 WL 9801769 (D. Conn. May 24, 2018) ........ 19

## Statutes

42 U.S.C. § 10801 et seq..................................................................................... 38
42 U.S.C. § 1983 ............................................................................................. 5, 24
Americans with Disabilities Act ........................................................................ passim
Conn. Gen. Stat. 52-555.................................................................................. 11, 24
Conn. Gen. Stat. Ann. § 7-294r (2018)............................................................. 28, 29, 30
Freedom of Information Act ................................................................................. 17
Rehabilitation Act ......................................................................................... passim

## Rules

Fed. R. Civ. P. 11 ......................................................................................... 14, 15
Fed. R. Civ. P. 12 .................................................................................. 1, 7, 8, 25
Fed. R. Civ. P. 12(b) ..................................................................................... passim
Fed. R. Civ. P. 12(e) ..................................................................................... passim
Fed. R. Civ. P. 12(f) ..................................................................................... passim
Fed. R. Civ. P. 12(g) ................................................................................. 1, 7, 8, 13
Fed. R. Civ. P. 12(g)(2)............................................................................. 8, 9, 12, 13
Fed. R. Civ. P. 15 ......................................................................................... 22, 24
Fed. R. Civ. P. 26(a)(1)..................................................................................... 23
Fed. R. Civ. P. 8 ............................................................................................. 18
Fed. R. Civ. P. 8(d)(2)....................................................................................... 19
Fed. R. Civ. P. 8(d)(3)....................................................................................... 19
Fed. R. Civ. P. 8(e) ......................................................................................... 19
Fed. R. E. 801(d)............................................................................................. 16

## Treatises

5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) .................................................................. 17
5C Fed. Prac. & Proc. Civ. § 1385 (3d ed.) ................................................................... 8
5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.) .............................................................. 8, 11

**Regulations**

28 C.F.R. § 35.130(b)(7)................................................................................................ 28, 29

28 C.F.R. § Pt. 35, App. B ............................................................................................... 28

Plaintiffs Valerie Jaddo, Administrator of the Estate of Steven Barrier, Jr., Deceased, on behalf of his Estate and Next of Kin including herself, and Connecticut Legal Rights Project, Inc. submit this Memorandum of Law in opposition to Defendants' Motion to Strike, Motion for More Definite Statement, and Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12, and in support of Plaintiffs' Cross-Motion to consolidate these Motions as permitted under Rule 12(g).

## INTRODUCTION

Plaintiff Ms. Jaddo, as the Administrator of the Estate of Mr. Barrier and on her own behalf as Mr. Barrier's mother, commenced this action to seek compensatory and punitive damages for the wrongful death, permanent injuries, and conscious pain and suffering of Mr. Barrier. Ms. Jaddo's claims arise out of Mr. Barrier's wrongful death suffered in the custody of the Defendant City of Stamford ("Defendant City") and its agents, servants, and employees, including but not limited to the individually named Defendant Officers between October 22, 2019, and October 23, 2019. *See* Amended Complaint ¶¶ 1, 2. The incident at issue began on the evening of October 22, 2019, when Mr. Barrier's sister contacted 911 regarding a domestic dispute with her brother, Mr. Barrier. *Id.* ¶¶ 1, 64. At this time, Mr. Barrier "had heightened paranoia, memory loss, hallucinations, mental confusion, delusions, and psychosis, and he needed urgent medical assistance." *Id.* ¶ 63. Indeed, according to the Defendant City's Executive Summary of Stamford Police Department's 'In Custody Death' Incident Review ("Executive Summary"), "the domestic incident further evolved into/contained elements of an Emotionally Disturbed Person (EDP) and a person with medical needs." Exhibit A to Amended Complaint at p. 2, ¶ 6; *see also* Amended Complaint ¶¶ 2, 67.

Defendant City's Police Department responded to the call by sending officers to Mr. Barrier's home. Amended Complaint ¶ 67. The first time Stamford police officers arrived at the home at or around 11:45 pm on October 22, 2019, Mr. Barrier had already left the premises. *Id.* ¶ 68. Ms. Jaddo immediately told the officers that her son had a psychiatric disability and was in mental health crisis. *Id.* ¶¶ 2, 64, 67; *see also* Police Body Camera Footage "Officer 1C Body Worn Camera (BWC) Video – (11:44:44 p.m. - 12:38:00 a.m.)" ("Body Camera Video 1"),[1] *accessible at https://drive.google.com/file/d/1cZ6dmK_Vxt74qhBXI_EKO6Z-LmOi4Jww/view* and incorporated in Amended Complaint ¶ 86. Ms. Jaddo also informed the police officers that Mr. Barrier had been diagnosed with schizophrenia and had recently started taking a new medication to address an increase in his symptoms. *See id.* ¶¶ 2, 64, 67, 70; *see also* Body Camera Video 1.[2] Ms. Jaddo also told the officers that her son and her daughter were only wrestling with each other; Mr. Barrier's sister also confirmed that she was not hurt and did not need a paramedic. *See* Amended Complaint ¶ 69. Moreover, Ms. Jaddo explained to the officers in thorough detail that Mr. Barrier's behavior was a direct result of him being in a mental health crisis. *See id.* ¶¶ 70, 73-74; *see also* Body Camera Video 1.[3] However, the officers never contacted a mental health crisis team or arranged to provide any medical assistance or accommodations for Mr. Barrier. *See id.* ¶¶ 79-80. Instead, the officers decided to arrest Mr. Barrier and, when leaving the home, instructed Mr. Barrier's sister to text the officers when Mr. Barrier returned. *See id.* ¶ 75.

At 1:24 am, the sister texted the officers to let them know Mr. Barrier had returned to the home. *See id.* ¶ 77. Although the officers were amply informed that Mr. Barrier needed urgent psychiatric care approximately one hour and forty minutes earlier during their first visit to the

---

[1] *See* Video timestamp 1:30 through 6:30.
[2] *See id.*
[3] *See id.*

home, they returned to Mr. Barrier's home to arrest Mr. Barrier; the Defendants failed to follow adequate protocols to mitigate the risk of Mr. Barrier's condition by calling for a mental health crisis team. *See id.* ¶¶ 78-82.

Defendants proceeded to chase Mr. Barrier outside of the home to a steep hill. *See id.* ¶ 83. When Defendants found Mr. Barrier in a semi-conscious state at the top of the hill, they still refused to provide timely medical assistance to ensure his safety and health. *See id.* During the times in which the officers activated their body cameras,[4] the footages show three officers handcuffing Mr. Barrier at the top of the hill by placing him face down in a prone position. *See* "Post 8S1 BWC Video – (1:40:35 a.m. - 1:44:50 a.m.)" ("Body Camera Video 2"),[5] *accessible at https://drive.google.com/file/d/1hKQFalMDfkpzet6HS2pG9do1BDqW4hBA/view* and incorporated in Amended Complaint ¶ 86. Thereafter, body camera footage shows the Defendant Officers demanding that Mr. Barrier get up and Mr. Barrier responding by telling them he could not because he was too tired. *Id.* ¶ 87; *see also* Body Camera Video 2.[6]

During this time, it was clear that Mr. Barrier was having difficulty breathing and was not resisting arrest. *See* Amended Complaint ¶¶ 88, 90. Indeed, "[a]s Mr. Barrier was unable to pick himself up, Defendant police officers then proceeded to forcibly drag him down the hill, still in handcuffs," in a prone position. *See id.* ¶ 91; *see also* Body Camera Video 2.[7] As Defendant police officers "indifferently and violently dragged Mr. Barrier down the hill, the police officers knew that Mr. Barrier could die," shown by their asking each other whether Mr. Barrier was breathing. *See id.* ¶ 92; *see also* Body Camera Video 2.[8]

---

[4] The Executive Summary admits that the Defendants violated the police body camera policy by turning off their body cameras when they were not supposed to. *See* Amended Complaint ¶ 12.
[5] *See* Video timestamp 0:00 through 2:00.
[6] *See id.*
[7] *See* Video timestamp 0:00 through 4:15.
[8] *See* Video timestamp 1:25 through 1:46 and 2:15 through 2:30.

Even though officers knew that Mr. Barrier was in a critical, life-threatening condition, they made sarcastic remarks about how they could roll Mr. Barrier's body down the hill rather than dragging him. *See* Amended Complaint ¶ 94. By the time Mr. Barrier was brought to the bottom of the hill, he lay limp on the ground, with "[his] hands … still handcuffed behind his back." *Id.* ¶ 96. Video footage shows Mr. Barrier "gasping for air and asking the police officers for help: 'Help me, help me please, ughh ughh.'" *Id.* ¶ 97; *see also* "Officer 1E BWC Video – (1:43:46 a.m. - 1:47:56 a.m.)" ("Body Camera Video 3"),[9] *accessible at* https://drive.google.com/file/d/14NP5aBgEYIHJIPCbHQUFhQMys2jP3oCi/view and incorporated in Amended Complaint, ¶ 86. Officers ignored Mr. Barrier's pleas for help, and told Mr. Barrier that they would toss him in the police car if he did not get in the car by himself. *See id.*; Amended Complaint ¶¶ 98-99.

Importantly, after Mr. Barrier was placed in the police car, video footage shows a police officer asking other officers if they should take Mr. Barrier to a hospital instead of the police precinct. Amended Complaint ¶ 100; *see also* Body Camera Video 3.[10] He further said, "Oh, I thought we had to. I thought we had to." Another officer responded, "No, he is psychotic. Nah, he's going to jail," while mockingly swirling his finger around his head. *Id.* This exchange shows Defendants' "conscious and deliberate choice to arrest Mr. Barrier and treat him like a criminal instead of providing him with medical assistance … because of his mental disability and their dismissive attitude toward it." Amended Complaint ¶ 101.

Thereafter, the transporting officer drove past the Stamford Hospital to take Mr. Barrier to the Stamford Jail. *See id.* ¶ 103. While in the car, Mr. Barrier had a seizure and was moaning in pain, but "the officer did not stop driving to check on Mr. Barrier." *Id.* According to the Executive

---

[9] *See* Video timestamp 1:20 through 2:54.
[10] *See* Video timestamp 3:00 through 4:00.

Summary, "Upon arriving at the Stamford Jail when taking him out of the cruiser at headquarters, officers found that Steven had lost consciousness." Exhibit A to Amended Complaint at p. 3; *see also* Amended Complaint ¶¶ 105-106. Nevertheless, they forcibly pulled Mr. Barrier out of the police car and continued to laugh and mock his declining health, while delaying to call for Emergency Medical Services ("EMS"). Amended Complaint ¶¶ 108-118.

After this prolonged downtime, aside from earlier delays and mistreatment, it was too late for EMS to save him, according to the Fire Department's EMS report:

> M3 and ES crews entered the lockup to find the patient propped up sitting against a wall with handcuffs on behind his back. One officer asked should they be removed. The paramedic from M3 leaned in to notice that the patient was not breathing. He felt for a pulse to find none. Capt. Davis requested that the handcuffs be removed, and they were removed right away.

*Id.* ¶ 117. Notably, the EMS scriber then recognizes that if Defendant police officers had called for a paramedic right away, Mr. Barrier could have survived: "Unfortunately, given the prolonged down time, the chances of meaningful recovery at this point were negligible." *Id.* ¶ 118.

Ms. Jaddo brought this lawsuit asserting that Defendants violated Mr. Barrier's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983—specifically, in the police officers' use of unreasonable and excessive force in arresting and detaining Mr. Barrier; and in police officers' deliberate indifference to Mr. Barrier's serious and emergent medical needs. Defendants' violation of Mr. Barrier's civil rights resulted in Mr. Barrier suffering extraordinary conscious pain and suffering, culminating in his wrongful death on the morning of October 23, 2019, which was Mr. Barrier's 23rd birthday. Defendant City also deprived Mr. Barrier's rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by denying Mr. Barrier adequate, reasonable accommodations, including ready access to psychiatric services while he was in mental health crisis. Ms. Jaddo also invoked supplemental jurisdiction to allege claims under Connecticut State Constitution and Connecticut State laws.

Joining Ms. Jaddo's prayer for compensatory and punitive damages is Co-Plaintiff Connecticut Legal Rights Project ("CLRP"), who seeks declaratory and injunctive relief to stop similar tragedies from befalling other Stamford residents with mental health disabilities. CLRP is a "non-profit legal services organization whose goal is to protect civil rights of mentally disabled Connecticut residents." Amended Complaint ¶ 23. CLRP has had to, and continues to, "divert significant resources to counteract Defendants' unconstitutional and unlawful practices against individuals with mental health disabilities during police interactions, which result in grave injuries and/or wrongful death to such individuals as seen in the tragic case of Mr. Barrier." *Id.* ¶ 24. Therefore, CLRP joins this action to redress impending harm to its activities, missions, and projects caused by Defendants' systemic unlawful practices toward CLRP's clientele. *Id.* ¶¶ 30-31. Specifically,  CLRP seeks an injunction directing Defendant City to stop wrongfully arresting mentally disabled individuals for nonlethal actions that directly result from their mental disability and to instead dispatch a community-led mental health response team as primary responders in applicable situations; to provide Stamford's residents access to urgent psychiatric services that remain available for twenty-four hours a day and seven days a week; and to appoint a Special Master at the Defendants' cost to chair a committee to evaluate, oversee, manage, advise, and direct ameliorative action for mentally disabled residents of the City of Stamford to prevent future mistreatment and unlawful arrests by Defendants. *Id.* ¶ 27.

CLRP has an organizational standing in this lawsuit as a nonprofit organization dedicated to protecting the civil rights of Connecticut residents with psychiatric disabilities, including having to divert its limited resources to ensure that legal rights of individuals with mental health disabilities are protected in Stamford police custody. *Id.* ¶ 31.

## PROCEDURAL POSTURE

Plaintiffs filed the Original Complaint, *i.e.*, Dkt. No. 1, on March 16, 2021. Process was timely served on March 24, 2021. Without having filed an Answer, Defendants first filed a Motion to Dismiss certain Counts of the Complaint under Rule 12(b) on May 19, 2021. Thereafter on June 8, 2021, Plaintiffs filed an Amended Complaint, *i.e.*, Dkt. No. 25, to address the alleged deficits detailed in Defendants' Rule 12(b) Motion. Defendants then filed a Motion for More Definite Statement and Motion to Strike under Rules 12(e) and (f) on June 29, 2021, in which they also sought to renew their 12(b) Motion in case the Court orders all Rule 12 Motions to be consolidated. Specifically, Defendants seek to dismiss CLRP's claim in its entirety for lack of standing and Ms. Jaddo's claim under ADA and RA for failure to state a claim.

Herein, Plaintiffs (a) cross-move to request that this Honorable Court consolidates Defendants' Rule 12 Motions pursuant to Rule 12(g); and (b) oppose each of Defendants' Rule 12 Motions and request that this Honorable Court denies Defendants' Motion for More Definite Statement, Motion to Strike, and Motion to Dismiss in their entirety.

## ARGUMENT

I. **Defendants' Motions under Rules 12(e), (f), and (b) must be consolidated and considered in conjunction.**

Plaintiffs respectfully request that Defendants' Rule 12 Motions filed to date be combined as one Motion as allowed under Fed. R. Civ. P. 12(g). In Defendants' Motion for More Definite Statement and Motion to Strike under Fed. R. Civ. P. 12(e) and (f) filed on June 29, 2021, Defendants claim that they are unable to answer or move in response to the Amended Complaint without the clarifications that they now seek. However, some of the arguments they raise pertain to the allegations that were included in the Original Complaint as well. Moreover, in Footnote 1 of their Motion, Defendants in fact sought to renew their 12(b) Motion to Dismiss as to certain

Counts of the Complaint (presumably as Amended) if this Court were to require all Fed. R. Civ.
P. 12 motions to be combined.

In the interest of judicial economy and efficient resolution of disputes, we respectfully
request that the Court combine all Rule 12 Motions as one. Such streamlining and consolidation
of pre-answer motions are favored by precedents and the Federal Rules. Notably, Fed. R. Civ. P.
12(g) has often been referred to as the "consolidation principle," where "[i]f the defendant
exercises the option afforded by Rule 12(b) and raises certain defenses and objections by
preliminary motion, he or she is bound by the consolidation principle in Rule 12(g), which
contemplates a single pre-answer motion in which the defendant asserts all the Rule 12 defenses
and objections that are then available to him or her." 5C Fed. Prac. & Proc. Civ. § 1385 (3d ed.).
Instead of *ad seriatim* motion practices on overlapping Rule 12 objections, Federal Rules clearly
contemplate "the presentation of an omnibus pre-answer motion in which defendant advances
every available Rule 12 defense and objection he may have that is assertable by motion." *Fra
S.P.A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976).

Notably, Rule 12(g)(2) explicitly precludes Defendants from making motions under Rule
12(e) or 12(f) that were available to them at the time they filed their previous 12(b) Motion to
Dismiss. *See Powers-Barnhard v. Butler*, 2021 WL 105752, at *2-*3 (N.D.N.Y. Jan. 12, 2021).
The Rule states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under
this rule *must not* make another motion under this rule raising a defense or objection that was
available to the party but omitted from its earlier motion" (emphasis added). Importantly, the filing
of an amended complaint will not revive the right to present by motion defenses that were available
but were not asserted in timely fashion prior to the amendment of the pleading. *See* 5C Fed. Prac.
& Proc. Civ. § 1388 (3d ed.). Many of the arguments that Defendants now seek to raise in their

Rule 12(e) and (f) Motions, including but not limited to their attempt to strike the reference to the Executive Summary, EMS report, video footages, and fire department report, Deft. Mem. of Law, Dkt. No. 32-1 at 11-12, could and should have been raised in their original 12(b) Motion. In *Powers-Barnhard v. Butler,* the court summarily denied the defense Motion to Strike and Motion for a More Definite Statement in a similar circumstance because the defendant failed to raise those defenses or objections in its original Motion to Dismiss. 2021 WL 105752, at *2.

Under Rule 12(g)(2), in filing their original 12(b) Motion on May 19, 2021, Defendants should have included all the defenses and objections they wished to raise in regard to the Original Complaint. Defendants' belated attempt to strike or seek clarification on the overlapping identical portions of Original and Amended Complaint should be rejected by this Court. By seeking to treat their 12(e) and 12(f) Motion separately from their renewed 12(b) Motion, Defendants appear to sidestep the well-established rule that all of the available defenses and objections should be raised in a combined Motion.

For the foregoing reasons, we respectfully request that Defendants' Motions under Rules 12(b), (e), and (f) be consolidated and, to that effect, oppose each of the Motions in turn in this Memorandum. In addition, to the extent that Defendants' Rule 12(e) and (f) Motion includes arguments that were available to them at the time of making their original Rule 12(b) Motion, Plaintiffs request those arguments to be summarily rejected for tardiness.

## II.    Defendants' Motions under Rules 12(e) and (f) must be summarily denied in part to the extent Defendants seek to raise objections or defenses that should have been but were not raised in their prior Rule 12(b) Motion.

For ease of reference, we list, in separate subsections, Defendants' assertions that pertain to both the Original Complaint and the Amended Complaint and therefore should have been raised and preserved when they made the initial Rule 12(b) Motion in response to the Original Complaint.

a. <u>Defendants' assertion that Plaintiffs' references to certain documents or portions of documents in the Complaint should be stricken must be rejected.</u>

In their Memorandum of Law in support of their new Motion, Dkt. No. 32-1 at 11-12, Defendants assert that Plaintiffs' references to the following documents or portions thereof should be stricken from the Complaint:

- "The Executive Summary of Stamford Police Department's 'In Custody Death' Incident Review" ("Executive Summary") and its attachment as an exhibit;
- EMS Report/Notes;
- URL location of the video recordings of the body camera footage; and
- Fire Department Report.

Defendants neglect that Plaintiffs made references to all the above-listed reports and descriptions in their Original Complaint as well. *See* Original Complaint ¶¶ 26, 43, 84, 108, 116, 117, 159. Same as in the Amended Complaint, Plaintiffs also included reference to the URL location of body camera footage in the Original Complaint. *See id.* ¶ 85. Furthermore, Plaintiffs had attached the Executive Summary as Exhibit A to the Original Complaint as well. Yet, in their previous Rule 12(b) Motion, Defendants chose not to challenge any of these references and incorporation, thereby waiving their right to object to same.

b. <u>Defendants' assertion that Plaintiffs' references to Ms. Jaddo's individual claim should be stricken must be rejected.</u>

Defendants also claim that the Court should strike any reference to an individual claim brought by Ms. Jaddo, or order clarification regarding the same. Deft. Mem. of Law, Dkt. No. 32-1 at 6-7. However, Defendants appear to ignore the fact that Ms. Jaddo had brought wrongful death claims in the Original Complaint as well, which damages by definition include the cost of reasonably necessary medical, hospital and nursing services, and funeral expenses that were expended by Ms. Jaddo individually. Also, as next of kin, Ms. Jaddo is a beneficiary of wrongful death damages payable to the Estate, and as administrator she has standing to seek them. *See* Conn.

Gen. Stat. 52-555; Original Complaint ¶¶ 166-170. For this reason, the Original as well as Amended Complaint included Ms. Jaddo individually as the Plaintiff.

If Defendants are arguing that the Original Complaint did not specify that Ms. Jaddo was individually entitled to wrongful death damages, Plaintiffs' stylistic revision of this in the Amended Complaint is not a good opportunity for Defendants to object when neither before, in their initial Rule 12(b) Motion, nor now do they raise a substantive objection to Plaintiffs' wrongful death claim. *See* 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.) (when the amendment merely corrects a previously insufficient allegation, it does not revive the defendant's right to challenge the sufficiency of the complaint). If Defendants in fact claim Ms. Jaddo is not entitled to any compensation on her own, that part of the Complaint becomes a nullity and should not require lengthy motion practice under Rule 12(e) and (f) that is reserved for palpably improper or utterly unintelligible allegations. *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999) (emphasizing that Motion to Strike is generally disfavored and rarely granted); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992) (holding that Motion for More Definite Statement is for unintelligible pleadings only, not a way to seek clarification on intelligible pleadings).

    *c.* <u>Defendants' assertion that Plaintiffs need to provide more definite statement instead of incorporating by reference other parts of the Complaint must be rejected.</u>

Defendants claim that Plaintiffs need to provide more definite statements instead of incorporating by reference the other paragraphs in the Complaint. Not to mention that incorporation by reference is a routine precautionary practice in notice pleading, but Defendants again neglect the fact that the Original Complaint also repeatedly made the same remark, "The Plaintiffs repeat, re-allege, and incorporate by reference each of the preceding allegations in this Complaint set forth fully herein." *See* Original Complaint ¶¶ 131, 135, 138, 144, 153, 163, 166,

171, 174, 181. Yet, Defendants' Rule 12(b) Motion did not challenge any of these allegations, indicating that they could respond to the Complaint without need for further clarification. Thus, Rule 12(g)(2) bars the Defendants from raising this novel argument in their 12(e) and (f) Motion.

  d.  Defendants' objections to certain paragraphs of the Amended Complaint as not simple, concise, and direct must be rejected.

Defendants also cite to certain allegations in the Amended Complaint as not "simple, concise and direct" and not "limited as far as practicable to a single set of circumstances." Deft. Mem. of Law, Dkt. No. 32-1 at 3-4. Defendants refer to the following as purportedly a "prime example" of such improper language, *id.* at 3:

> Upon information and belief, Defendants have a systemic pattern of non-compliance with CIT, failing to provide reasonable accommodations to persons with known or perceived mental health disabilities, needlessly and recklessly escalating situations involving individuals requiring mental health services, using excessive force in such situations, and acting with deliberate indifference in refusing to provide urgent or psychiatric care. This pattern of behavior is particularly salient when Defendants respond to people of color having a mental health crisis. Amended Complaint ¶ 9.

Again,  Defendants ignore that substantively identical allegation was present in the Original Complaint and that they waived the right to object to same by failing to raise this issue in their 12(b) Motion. Specifically, in the Original Complaint, Plaintiffs alleged the following:

> The Defendants have a statistical pattern of failing to follow CIT [Crisis Intervention Team] training, failing to provide accommodations under the ADA, escalating situations, acting violently, and acting with deliberate indifference by not using reasonable discretion under Conn. Gen. Stat. § 17a-503 to provide urgent psychiatric care when responding to people of color having a mental health crisis. Original Complaint ¶ 140; *see also id.* ¶ 25.

Defendants cannot explain how Plaintiffs' further elaboration of substantively identical allegations, and couching the allegations as made "upon information and belief" somehow make the previously unobjected-to allegation now objectionable and improper.

In conclusion, because Defendants, in their Rule 12(b) Motion to Dismiss, failed to raise many of the arguments they now seek to raise in their Rule 12(e) and (f) Motion, these arguments

are untimely and barred under Rule 12(g)(2). Furthermore, the heavy overlap between what should have been raised in the original Motion and what is raised in the new Motion counsels heavily toward this Honorable Court's granting Plaintiffs' Cross-Motion to consolidate all the Motions as one in the interest of judicial economy.

**III.    Even if this Court were to find that Rule 12(g) does not preclude Defendants' 12(e) and 12(f) Motions, the Court should still deny the Motion for substantive reasons.**

> *a.*  Defendants' motion to strike reference to various items from the Amended Complaint should be denied as these items have strong bearing on the issues in the case, contain admissible evidence, and are not prejudicial to the Defendants.

Under Rule 12(f), a court may strike from a pleading redundant, immaterial, impertinent, or scandalous matter. However, a high burden of proof is required for courts to grant a Motion to Strike because "Motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Crespo v. N.Y. City Transit Auth.*, 2002 WL 398805, at *11 (E.D.N.Y. Jan. 4, 2002) (internal citations omitted); *see also Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011). Hence, even though courts have the discretion to grant or deny a Rule 12(f) motion, "such motions are generally disfavored and rarely granted." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013). Furthermore, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Accordingly, a court will only grant a Motion to Strike if the movant can show that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Comprehensive Inv. Servs. v. Mudd* (*In re Fannie Mae 2008 Sec. Litig.*), 891 F. Supp.

2d 458, 471 (S.D.N.Y. 2012) (internal citations omitted). A Rule 12(f) motion to strike an allegation as impertinent or immaterial "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893 (internal citations omitted). This is an onerous standard, and in fact, even an allegation that cannot pass Rule 11 scrutiny at a later stage in the litigation should not be stricken at the pleading stage if it were sufficiently related to the plaintiffs' overall claim. *Lynch*, 278 F.R.D. at 66. Similarly, a "scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court," which is a similarly high standard. *Cabble v. Rollieson*, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 24, 2006).

In the present case, as described in detail above, Defendants move to strike certain documents and descriptions that the Amended Complaint referenced or incorporated to support the allegations—namely, the Executive Summary, the EMS Report/Notes, the URL location of body camera video footages, the Fire Department Report, and CLRP testimony. Deft. Mem. of Law, Dkt. No. 32-1 at 11-12. Specifically, Defendants assert that these documents "do not form the underlying factual basis of the claims set out in the Amended Complaint," *id.* at 11, "contains inadmissible evidence" in the case of the Executive Summary, *id.* at 12, and "similarly immaterial and … prejudicial and misleading" in the case of EMS Report/Notes and Fire Department Report, *id.* Although the Defendants state that the reference to the URL location of the video recordings of the body camera footage should also be stricken from the Amended Complaint, Defendants do not describe a specific reason why or how these recordings fail to support Plaintiffs' underlying claims.[11] Finally, as to Exhibit B to the Amended Complaint, CLRP's legislative testimony that was added so as to address any issue with CLRP's organizational standing that Defendants raised

---

[11] In fact, this argument appears to border on absurdity to the extent the Complaint heavily draws from and quotes the specific conversations between Defendant police officers in the footages to support various claims.

in their original 12(b) Motion, Defendants claim that such reference is "redundant and impertinent and should be stricken for those reasons." *Id.*

Defendants' Rule 12(f) Motion to Strike cannot meet the high threshold required for the court to strike these references because Defendants have not shown that the descriptions and documents cited in the Amended Complaint contain no evidence that would be admissible; have no bearing on the issues in the case; and would prejudice the Defendants.

It is well established that "even allegations that "may not pass Rule 11 scrutiny at a later stage in the litigation" will not be stricken if they have some "possible bearing on the subject matter of the plaintiff's claim." *Lynch*, 278 F.R.D. at 66; *see also Velez v. Lisi*, 164 F.R.D. 165, 167 (S.D.N.Y. 1995) (rejecting defendants' motion to strike purportedly baseless allegations of perjury and criminal misconduct that defendants claimed were intended for harassment and intimidation, because the allegations were "sufficiently related to the plaintiff's overall claim"). Specifically, in *Lynch,* the court focused on the fact that defendants could challenge the claims as irrelevant or baseless *after* the parties completed discovery, stating that the defendants "will have ample opportunity after discovery to show that these allegations are baseless or irrelevant to Plaintiffs' claims." 278 F.R.D. at 66 (internal citations omitted); *see also Smith v. AVSC Intern., Inc.,* 148 F.Supp.2d 302, 317-18 (S.D.N.Y.2001) (denying a motion to strike a paragraph from a complaint that referred to death threats the plaintiff allegedly received after reporting discrimination because "while clearly inflammatory," if the plaintiff were able to gather proof of its relevance to his retaliation claim it would be "highly probative.").

Here, all the referenced, indeed government released documents, that Defendants seek to strike have a direct bearing on the issues in the case. There is simply no question that they are all sufficiently related to the Plaintiffs' overall claim. The Executive Summary, the notes by the EMS

and the Fire Department, and the police body camera footages were the primary sources Plaintiffs relied upon in making their claims. These are the publicly available materials that describe, detail, and show the inhumane treatment that Mr. Barrier received during the last hours of his life—Defendants cannot claim that these materials are somehow immaterial or irrelevant when they are the documentation and review of their own behavior during the subject incident.

Similarly, Co-Plaintiff CLRP added the detailed description of what CLRP does and its testimony regarding relevant legislation in its Amended Complaint paragraphs 210, 211, and as Exhibit B because Defendants argued in their initial Rule 12(b) Motion that CLRP did not plead sufficient facts to establish that it has standing to file for injunctive relief. Deft. First Mem. of Law, Dkt. No. 19 at 5-12. In Defendants' own account, to establish its organizational standing, CLRP needs to show "a likelihood that they will be injured in the future" by Defendants' acts, *id.* at 12 (internal citations omitted), which is precisely what these additional references in the Amended Complaint set out to do. Defendants cannot now claim that CLRP's organizational activities that directly bear on its organizational standing is somehow redundant or impertinent, when they had sought out to challenge the sufficiency of same in their original Rule 12(b) Motion.

In addition to challenging the relevance of various items, as to the Executive Summary only, Defendants' Memorandum raises its admissibility as evidence at trial as another purported ground to strike all references to it from the Amended Complaint. However, it would be improper to come to a conclusion on the admission of this critical evidence at this early stage of litigation. The Executive Summary is a publicly available report of the investigation conducted by the Defendant City's own agents. Defendants cannot credibly claim that their agents' own review and statements regarding the subject incident should be stricken from the record as impertinent or prejudicial to them. *See* Fed. R. E. 801(d). Of course, the jury will only see the Executive Summary

if the Court ultimately determines that it is relevant and admissible under the Federal Rules of Evidence, but such a decision must be made after discovery.

Finally, all of the referenced items that Defendants seek to strike are publicly available and therefore cannot be said to prejudice the Defendants. Defendant City itself publicly released the Executive Summary on July 7, 2020, and the police body camera footage was also published on said URL long before the Plaintiffs filed their Original Complaint. CLRP's legislative testimony, as well as the EMS and Fire Department Records, are also easily accessible to the public through the internet or requests under the Freedom of Information Act.

Notably, in *Lynch*, the case Defendants cite to support their argument, the court denied the defendants' motion to strike those portions of the complaint that included statements from documents including letters, newspaper columns, radio shows, and other forms of public communication in part because the defendants were not prejudiced by reference to these "public" and "generally available" documents. 278 F.R.D. at 67. The granting of a Rule 12(f) motion to strike irrelevant and scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter since, once filed, pleadings generally are public documents and become generally available. *See* 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.). Therefore, as to the materials that were already readily accessible to the public prior to the filing of the lawsuit, Defendants cannot claim that they are prejudiced by Plaintiffs' reference to those materials in the Complaint.

      *b.* <u>Defendants' attempts to strike certain other allegations from the Complaint should be similarly rejected.</u>

Defendants also seek to strike reference to "Connecticut" police, as opposed to "Stamford" Police, from Paragraph 149 of Amended Complaint and the clause regarding how many members of Mr. Barrier's community were distraught by his death in Paragraph 43. At this early juncture of

the lawsuit, it is premature to conclude that these allegations have no bearing on the issues in this case and that no evidence in support of these allegations would be admissible at trial. Defendants' concern about any prejudice resulting from the jury seeing these allegedly immaterial allegations is also unfounded, in that the jury will only see these allegations or evidence in support thereof if this Honorable Court eventually determines that they are in fact relevant and admissible under the Federal Rules. *See Lynch*, 278 F.R.D. at 66; *Velez*, 164 F.R.D. at 167.

> *c.* <u>Defendants' motion for a more definite statement should be denied as Amended Complaint is sufficiently clear to allow Defendants to reasonably prepare a response.</u>

Rule 12(e) allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. It "is designed to remedy unintelligible pleadings, not merely to correct for lack of detail," *Kelly*, 145 F.R.D. at 35 (internal citations omitted), and therefore "should not be granted if the complaint complies with the 'short and plain statement' requirement of Federal Rule of Civil Procedure 8," *Columbia Ins. Co. v. Brown Shoe Co.*, 233 F.R.D. 250, 251 (D. Conn. 2005). Hence, a motion pursuant to Rule 12(e) should only be granted where "the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Boothe v. TRW Credit Data*, 523 F. Supp. 631, 635 (S.D.N.Y. 1981); *see also Powers-Barnhard*, 2021 WL 105752, at *3.

Moreover, Defendants cannot make a Rule 12(e) motion simply as a measure to provide a more enlightened or accurate response; the Complaint should be so unintelligible that a response is simply impossible. "This is because Rule 12(e) is meant to rectify incomprehensible or confused pleadings, not to add detail or substitute for the discovery process. ... The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims

made in the pleadings." *Wis. Province of Soc'y of Jesus v. Cassem*, 2018 WL 9801769, at \*2 (D. Conn. May 24, 2018).

Defendants' Rule 12(e) Motion claims that they require more definite statement of Plaintiffs' claims in the following four regards: (1) Plaintiffs incorporate the previous paragraphs of the Complaint in each Cause of Action, instead of reciting precisely those facts that make out each particular Cause of Action, Deft. Mem. of Law, Dkt. No. 32-1 at 8-10; (2) Plaintiffs refer to certain claims that were in fact not included as a Cause of Action, *id.* at 12-13; (3) Plaintiffs refer to certain Stamford police officers who were not named as individual Defendants, *id.* at 5-6; and (4) Ms. Jaddo raises an individual claim, not merely as an Administrator of Mr. Barrier's Estate, *id.* at 6-8. We address each of these arguments in turn.

### i.  *Plaintiffs' incorporation of previous paragraphs in each Count*

First, a more definite statement is not required in regard to Plaintiffs' incorporation of overlapping allegations in each Cause of Action. As Defendants' Memorandum shows, they clearly know which allegations in the Complaint pertain to which cause of action. Deft. Mem. of Law, Dkt. No. 32-1 at 8-10. Moreover, it is well established in the Federal Rules that the Complaint "may set out 2 or more statements of a claim … alternatively or hypothetically, either in a single count … or in separate ones." Fed. R. Civ. P. 8(d)(2). The Rules plainly state that "A party may state as many separate claims or defenses as it has, regardless of consistency," and that "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(3), 8(e). Defendants seek to avoid this foundational rule and attempt to hold Plaintiffs to an exacting, heightened standard of pleading, apparently so that they can provide a more accurate response. This improper attempt must be rejected. *Cassem*, 2018 WL 9801769, at \*2.

Furthermore, clearly, Defendants can reasonably and appropriately respond to the Causes of Actions in the Amended Complaint as the Defendants have responded previously to these same incorporations in their 12(b) Motion to Dismiss. Defendants cannot credibly argue that Plaintiffs' claims are unintelligible when they did not raise such objection to the Original Complaint that also incorporated other portions of the Complaint in each Cause of Action, Original Complaint ¶¶ 131, 135, 138, 144, 153, 163, 166, 171, 174, 181. In fact, the Amended Complaint, compared to the Original Complaint, further clarified which allegations pertain to which specific Defendants, instead of generically pleading them against all Defendants. If anything, Defendants should find the Amended Complaint more intelligible and clearer, not less.

Defendants' argument is substantively identical to one raised and rejected in *Powers-Barnhard*, 2021 WL 105752, at *3. There, the court denied defendants' Motion For A More Definite Statement as to the plaintiffs' incorporation of the rest of the complaint in each cause of action because the plaintiff provided notice of the general nature of the claims; the discovery procedures would make the defendant aware of the factual basis of the claims; and the defendant did not thoroughly describe how the purported "shotgun pleading" would prejudice the parties in future proceedings. Similarly, here, Defendants do not and cannot explain how Plaintiffs' incorporation of various allegations in each Cause of Action makes the Complaint unintelligible, and what actual prejudice would result to the Defendants absent a more definite statement. *See Patrick Dev., Inc. v. VIP Restoration, Inc.*, 2010 WL 447390, at *2 (W.D.N.Y. Feb. 2, 2010) (denying a motion for a more definite statement where "defendant [had] not shown how the complaint is unintelligible or what prejudice—i.e., what loss of rights in later proceedings or at trial—it will suffer if it answers or otherwise challenges the complaint in its current form").

The Amended Complaint, in specific and abundant detail over 43 pages, specifies Plaintiffs' allegations in a manner that "provides sufficient notice" to the Defendants. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). It is certainly not "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Boothe*, 523 F. Supp. at 635. In such circumstance, the parties should be encouraged to proceed with discovery, "rather than to require plaintiffs to more specifically plead their causes of action." *Id.*

Defendants rely on *Oliver v. New York State Police*, 2019 WL 453363 (W.D.N.Y. Feb. 5, 2019) in their Memorandum in Support. However, the *Oliver* court described the plaintiff's complaint as that of "voluminous factual allegations followed by a list of 20 causes of action, *none of which are tied*." 2019 WL 453363, at *10 (emphasis added). The present case is clearly distinguishable because here, Plaintiffs' Amended Complaint contains Causes of Action that are all tied together and deriving from the Defendants' violations of Mr. Barrier's rights and Defendants' continued custom and practice of violating the rights of Stamford residents with psychiatric disabilities. Defendants do not appear to dispute this and simply seek more definite statement so that they can better determine "which particular allegations relate to which particular claim." Deft. Mem. of Law, Dkt. No. 32-1 at 10. Such attempt should be rejected.

*ii. Plaintiffs' purported allusion to claims not set out in any Count*

Second, Defendants claim that Plaintiffs allude to certain new causes of action that were not set out as separate Counts in the Amended Complaint. The only actual example that Defendants provide is where, in the Preliminary Statement section of the Amended Complaint, Plaintiffs state "Because of the Stamford Police Department's gross and reckless conduct." While unclear, it appears that Defendants are essentially claiming that Plaintiffs cannot have the modifiers "gross

and reckless" unless they were to set it out as a separate Count from what they already allege, including Deliberate Indifference to Mr. Barrier's Constitutional Rights (Counts 1, 2, 6) and State law negligence (Counts 7, 8, 9).

Defendants are on sufficient notice what Plaintiffs' actual claims are, set out in detail in ten separate Counts with enumerations of which Defendants each Count is against. Defendants' attempts to pick out three words in the 43-page Complaint that are purportedly not addressed by the Ten Counts should be rejected. Moreover, gross negligence is a specific characterization of the level of negligence in stating a negligence claim; and recklessness is often used synonymously with intent and deliberate indifference in appellate authority. *See*, *e.g.*, *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814 (Conn. 2002); *Brunette v. City of Burlington, Vermont*, 2018 WL 4146598, at *30 (D. Vt. Aug. 30, 2018). Finally, to the extent discovery supports some level of Defendants' subjective culpability that is not covered by Plaintiffs' existing claims, such claims should serve as a ground for Plaintiffs' subsequent Motion to Amend the Complaint under Rule 15, not for Defendants' pre-Answer Motion at this early stage.

Defendants cite *Wallett v. Anderson*, 198 F.R.D. 20, 24 (D. Conn. 2000) to support their assertion that every conceivable claim should be set out in separate Counts in the Complaint. Notably, in *Wallett*, the complaint only had one Constitutional Count and yet invoked multiple separate constitutional provisions (free speech, equal protection, and substantive due process). Yet, the court found even this to *not* be a basis for granting the 12(e) Motion as it determined that the factual basis for each of these violations was in fact identical. The reason why the 12(e) Motion was granted in *Wallett* was because the complaint, while invoking the supplemental jurisdiction statute, failed to state *any* State law Counts other than to generally allege that the "defendants... have caused him severe emotional distress." *Id.* at 24-25. Plaintiffs' Complaint herein is clearly

- 22 -

distinguishable from the *Wallett* complaint in that Plaintiffs articulated various separate Counts under Federal and State Constitution, Federal Statutes, and State common law, with specific details pertaining to each Count. Indeed, the *Wallett* court made it abundantly clear that Motions for More Definite Statement are generally disfavored as long as defendants are on sufficient notice of plaintiffs' claims. *Id.* at 24 (internal citation omitted). Defendants' attempt to seek exacting particularization of all conceivable claims, before discovery, should be rejected.

### iii.   *Plaintiffs' reference to unidentified officers*

Third, Defendants claim that they cannot respond to the Amended Complaint because it refers to "Defendant police officers" as a term including "both individually named Defendants and any and all other employed police officers of the Defendant Town and City of Stamford, Connecticut, who were participating in the specific actions and events described at the time." Amended Complaint ¶ 2. Defendants' argument is essentially that the Complaint is unclear as they do not know who all the Defendants are.

By making this argument, Defendants in essence fault Plaintiffs for not knowing the identity of all Stamford police officers who were involved in Mr. Barrier's arrest and violated his Constitutional and civil rights—all prior to the exchange of any discovery, including Rule 26(a)(1) disclosures. Plaintiffs identified the individually named Defendant officers by referencing the publicly available documents and video footages, but by no means have exhaustive knowledge regarding all Stamford officers who were deliberately indifferent to Mr. Barrier's health and well-being and (likely supervisory) officers who willfully condoned and acquiesced to such deliberate indifference. Moreover, the term "Defendant police officers" makes logical sense given that there is no dispute thus far that all of the officers involved are agents, servants, or employees of Defendant City and their negligence is properly covered by Plaintiffs' negligence and wrongful

death claims against Defendant City under the doctrine of vicarious liability and *respondeat superior*. Again, to the extent that there will be additional officers identified as proper individual defendants in this action, under the Constitution and 42 U.S.C. § 1983, such addition is a matter to be dealt with by Rule 15 amendment of the pleading as is routinely done, not by pre-Answer Motion prior to discovery.

> iv. *Plaintiffs' reference to Ms. Jaddo's individual claims and reference to "Plaintiffs" as a purportedly unidentified group*

Finally, Defendants claim that Plaintiffs should be ordered to provide a more definite statement to clarify what individual claim Ms. Jaddo may have, separate and apart from claims she is asserting as Administrator of the Estate of Steven Barrier. As was addressed in the prior Section II-b, Defendants' argument neglects the fact that Ms. Jaddo, as the surviving next of kin as well as administrator of Mr. Barrier's estate, is entitled to receive traditional wrongful death damages as well as out-of-pocket expenses like for funeral costs. *See* Conn. Gen. Stat. 52-555; *see also Katsetos v. Nolan*, 170 Conn. 637, 657 (Conn. 1976). Therefore, contrary to Defendants' assertion, there is no confusion to Paragraph 28 of the Amended Complaint: "Plaintiff Ms. Jaddo, as the Administrator of the Estate of Mr. Barrier and on her own behalf as Mr. Barrier's mother, seeks compensatory and punitive damages for the wrongful death, permanent injuries, and conscious pain and suffering of Mr. Barrier," and similarly with Paragraphs 22 and 135.

This should also resolve Defendants' alleged confusion regarding who the "Plaintiffs" are where "Plaintiffs repeat and re-allege" the allegations for each Cause of Action. Amended Complaint ¶¶ 131, 135, 138, 143, 153, 166, 179, 183, 189, 192. Ms. Jaddo is the Plaintiff who brings forth First through Ninth Causes of Action as the Administrator of Mr. Barrier's Estate and also on her own behalf to the extent that any wrongful death damages inure to her as an individual. Furthermore, even if there is some confusion regarding whether the word "Plaintiffs" included

CLRP, Defendants are not prejudiced in any way as it is clear that CLRP is only seeking declaratory and injunctive relief and any costs or attorneys' fees associated with such, and not seeking any compensation with regards to Mr. Barrier's death. *See* Amended Complaint "Request for Relief" section.

In sum, Defendants are on ample and sufficiently clear notice regarding the nature of Plaintiffs' allegations and relief sought. There is no reason to continue revising the Complaint, seemingly in the exact way that Defendants would seek, instead of engaging in discovery for all parties to better understand the factual predicates for the claims brought. Therefore, Plaintiffs respectfully request that Defendants' Rule 12(e) and (f) Motion be denied in its entirety.

**IV.    If this Court were to allow consolidation of Defendants' Rule 12 Motions, the Court should deny Defendants' renewed Rule 12(b) Motion.**

In the event that this Honorable Court grants Plaintiffs' Cross-Motion to consolidate all Rule 12 Motions, Plaintiffs will address the merit of Defendants' renewed 12(b) Motion in this Memorandum as well. As previously explained, on May 19, 2021, Defendants originally filed a Rule 12(b) Motion to Dismiss in response to Plaintiffs' Original Complaint. After Plaintiffs amended the Complaint, when filing the within Motion under Rule 12(e) and (f) on June 29, 2021, Defendants sought in Footnote 1 to renew part of their previous Rule 12(b) Motion in case that this Court orders consolidation of all Motions. Specifically, the renewed 12(b) Motion seek to dismiss the following claims: Ms. Jaddo's ADA claim against Defendant City set out in the Fourth Count; Ms. Jaddo's RA claim against Defendant City set out in the Fifth Count; and claim brought by CLRP in the Tenth Count. Plaintiffs hereby oppose this Motion in its entirety and assert that Plaintiffs plead with sufficient factual specificity Defendants' violation of Mr. Barrier's ADA and RA rights; and that CLRP has organizational standing to bring this lawsuit.

*a.*   Plaintiff Ms. Jaddo has brought a cognizable claim against Defendant City under ADA and RA.

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & Council of Balt. v. Citigroup, Inc., 70*9 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly, 55*0 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of N.Y.*, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). When reviewing a Rule 12(b) Motion to Dismiss, the court must accept well-pleaded factual allegations in the Complaint as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

Defendants assert that Ms. Jaddo does not have a cognizable claim under the ADA, and by extension, the RA, because she has not pleaded sufficient facts to establish that her deceased son Mr. Barrier was discriminated against on account of his disability as required under these laws. *See* Deft. First Mem. of Law, Dkt. No. 19 at 16-20. Specifically, Defendants rely on an argument that the officers were allegedly responding to a domestic violence case, not a psychiatric crisis. *See id.* at 18. Defendants neglect Plaintiffs' specific allegations that Ms. Jaddo in fact made it clear to Defendant police officers that Mr. Barrier was in a psychiatric crisis and required urgent medical assistance. *See* Amended Complaint ¶¶ 2, 64, 67, 73, 78. Plaintiffs alleged with ample factual specificity that Defendants were aware of Mr. Barrier's disability. *Id.* ¶¶ 2, 3, 47, 48,70, 73, 78. In fact, Plaintiffs cite to the police body camera footage to quote a verbal exchange between Stamford police officers where one officer asked, seeing Mr. Barrier's state when he was placed in a police

car, whether to take him to a hospital instead of a police precinct, and said "Oh, I thought we had to. I thought we had to," and one of the individually named Defendant Officers callously responded "No, he is psychotic. Nah, he's going to jail," while mockingly swirling his finger around his head. *Id.* ¶ 100; *see also* Body Camera Video 3.[12]

Given this exchange, taken as true at this early juncture of the lawsuit, Plaintiffs sufficiently pled that Defendants denied Mr. Barrier needed medical services "because of his disability." *Id.* ¶ 156. Defendants made a "deliberate choice to arrest Mr. Barrier and treat him like a criminal instead of providing him with medical assistance" and denied him "life-saving medical treatment that could have prevented his premature death for no other reason than that he is 'psychotic.'" *Id.* Amended Complaint also alleges that Defendants were "dismissive" toward Mr. Barrier's "mental disability" and "repeatedly mocked and laughed at Mr. Barrier's condition even after it became apparent that Mr. Barrier was having grave difficulty breathing and needed urgent medical attention." *Id.* ¶¶ 101-102.

Under the ADA and RA, a plaintiff should demonstrate that he is a qualified individual; that he was discriminated against by defendant; and that such discrimination was due to his disability. *See Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) ("[T]he same factual allegations generally will support both ADA and Rehabilitation Act Claims"). Defendant City incorrectly asserts that Plaintiff Ms. Jaddo failed to allege the third prong[13] because she did not demonstrate "not only that discrimination took place by reason of such disabilities, but rather that the denial of relevant benefits or exclusion from

---

[12] *See* Video timestamp 3:00 through 4:00.
[13] Defendants' Memorandum of Law does not challenge the first or second prong and therefore, this Memorandum will not address those prongs.

relevant participation had been solely because of his or her disability." Deft. First Mem. of Law, Dkt. No. 19 at 17-18.

Notably, in the Second Circuit, failure to reasonably accommodate plaintiff's disability is regarded as an independent ground for ADA and RA liability, separate and apart from disparate treatment or disparate impact. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). It is for this reason that all police departments, including Stamford Police Department, are required to accommodate individuals with psychiatric disabilities during arrest under ADA and RA. *See* 28 C.F.R. § 35.130(b)(7); Conn. Gen. Stat. Ann. § 7-294r (2018). Furthermore, in an explanatory appendix to the ADA regulation regarding state and local government services (*i.e.*, Title II of the ADA) originally published on July 26, 1991, the Department of Justice ("DOJ") emphasized that the "obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities. [L]aw enforcement personnel [are] required to make appropriate efforts to determine whether perceived strange or disruptive behavior [ ] is the result of a disability." 28 C.F.R. § Pt. 35, App. B.

Hence, under Title II of the ADA and Section 504 of the RA, police has an affirmative obligation to provide adequate accommodations to individuals with psychiatric disabilities during arrest. *See Reyes v. Galpin*, 2019 WL 959680, at *9 (D. Conn. Feb. 27, 2019) (holding that plaintiff "has pled facts which render plausible her allegation that plaintiff's decedent suffered a violation of his right to a reasonable accommodation of his disability because of an alleged failure to train and despite defendants' knowledge of the need for such training"); *Reyes v. Town of Thomaston*, 2020 WL 5849529, at *4 (D. Conn. Sept. 30, 2020); *Felix v. City of N.Y.*, 344 F. Supp. 3d 644, 666 (S.D.N.Y. 2018). In *Reyes v. Town of Thomaston,* this District firmly established that police

departments should accommodate individuals with psychiatric disabilities during arrest under the

ADA, Connecticut state law, Conn. Gen. Stat. Ann. § 7-294r, and DOJ regulations such as 28

C.F.R. § 35.130(b)(7). 2020 WL 5849529, at *4. Specifically, the court stated:

> Connecticut law mandates that, as of October 1, 2014, "each review training program" conducted "by a municipal police department in the state shall include a course on handling incidents involving an individual affected with a serious mental illness." Conn. Gen. Stat. Ann. § 7-294r (2018). This state training mandate is a means of operationalizing DOJ regulations that require municipalities to "make reasonable      modifications in policies, practices, or procedures... to   avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). The importance of this training obligation was underscored in the State's Attorney's investigative report [which] highlighted that "an individual suffering from mental illness is sixteen times more likely than someone not suffering from mental illness to be killed during a police encounter. … The report also details seven separate incidents in Connecticut in which mentally disabled individuals were killed by police while experiencing a psychotic episode since 2001. (*Id.*) The death of [plaintiff's decedent] is now eighth on that list.[14]

*Town of Thomaston*, 2020 WL 5849529, at *4. In other words, the court firmly laid out that the

municipalities in the State of Connecticut have an affirmative duty to train their police officers on

how to recognize, accommodate, and properly respond to mentally ill individuals during arrest;

and that failure to do so may give rise to ADA liability. *See also Felix*, 344 F. Supp. 3d at 666

("Plaintiffs have plausibly alleged [under ADA and RA] that the City failed to train officers with

respect to the treatment of individuals with mental illness, including but not limited to

implementing Crisis Intervention Training, backup calls, and similar policies").

Defendants rely heavily upon *Tardif v. City of N.Y.*, 991 F.3d 394 (2d Cir. 2021) to make

this argument. However, the *Tardif* court also recognized that "discrimination" against a qualified

individual on the basis of disability under Title II of ADA does include "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

---

[14] The *Thomaston* court's consideration of defendant's own investigative report regarding subject incident as well as the deaths in Connecticut generally (as opposed to just in Defendant Town) also cuts against Defendants' arguments that Plaintiffs' reference to the Executive Report, video footages, and the deaths of mentally disabled individuals in Connecticut generally should be stricken from the Amended Complaint as immaterial.

with a disability" under the plain meaning of the ADA Statute. 991 F.3d 403 n. 6; *see also* 42 U.S.C. § 12112(b)(5)(A). The sole question that the *Tardif* court was resolving was whether "the alleged failure by the police to provide custodial medical services to [detained plaintiff] in a timely and adequate manner prior to her arraignment, *by itself*, constitutes a failure to make a reasonable accommodation by reason of an individual's disability under the ADA." *Id.* at 404. The *Tardif* court concluded that "the district court properly granted summary judgment on the ADA claim because there was no evidence demonstrating the City delayed administering medication 'by reason of' Tardif's disability, as required under the statute." 991 F.3d 394 (2d Cir. 2021).

The present case poses several critical distinctions from the facts pled in *Tardif*. Plaintiff Ms. Jaddo has sufficiently pled and provided concrete factual allegations that Defendant City refused to provide medical treatment to Mr. Barrier, *knowing* his mental health disability and his dire physical condition, *because* they perceived Mr. Barrier as "psychotic." Amended Complaint ¶¶ 100-101, 156, 169. Plaintiff quoted one of the Defendant Officers making a deliberate and reckless decision, when he was in a crossroads as to whether to take Mr. Barrier to police precinct or to a hospital, that they should arrest him and treat him like a criminal *because* he was "psychotic." This officer's statement, "he is psychotic. Nah, he's going to jail," is a prime example of Defendants' deprivation of urgently needed life-saving services to Mr. Barrier *because* of his disability. *Id.* ¶¶ 101. For this reason, this District has repeatedly ruled that failure to accommodate individuals with psychiatric disabilities during arrest is a violation of the ADA and RA. *See Galpin*, 2019 WL 959680, at *9; *Town of Thomaston*, 2020 WL 5849529, at *4; *see also* Conn. Gen. Stat. Ann. § 7-294r (requiring municipalities to train police officers to accommodate individuals with mental health disabilities during arrest).

Unlike in *Tardif* where the ADA claim solely relied upon defendants' medical negligence in treating a detainee with a disability, here, the Amended Complaint argues that Defendants made a specific conscious choice to arrest Mr. Barrier and criminalize his conduct because of his disability. *See Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 369 (S.D.N.Y. 2015) (identifying at least two types of ADA claims applicable to arrests of disabled individuals, including "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, [where police] fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." Not only did Defendants wrongfully arrest Mr. Barrier, but they also failed to follow proper guidelines during the arrest, denying him needed medical services because of his psychiatric disability that was well known to the Defendants. *See* Amended Complaint ¶¶ 3, 47, 49, 79-80, 158-163. These allegations sufficiently state a claim under ADA and RA at this early juncture of the lawsuit.

Furthermore, in the Amended Complaint, Plaintiffs pled that Defendant City has a routine policy and pattern of violating individuals' ADA rights during arrest. *Id.* ¶¶ 1, 30, 158, 171. This allegation also distinguishes the present case from *Tardif* because, in that case, the court emphasized how defendant police's delay in providing plaintiff medication was "an isolated and temporary incident" and there was no "indication that the City systematically delays or denies pre-arraignment detainees reasonable medical services for their disabilities." 991 F.3d at 407.

Defendants' argument that Plaintiffs cannot state a cognizable ADA and RA claim because Defendant City was responding to "a domestic violence call; not a call regarding a psychiatric health crisis" is similarly misplaced. Deft. First Mem. of Law, Dkt. No. 19 at 18. The Amended Complaint alleges that Defendant City understood that it was responding to a mental health crisis

and was specifically and repeatedly told so by Ms. Jaddo. *See* Amended Complaint ¶¶ 70, 73, 78. In the Executive Summary referenced and annexed to the Amended Complaint as Exhibit A, Defendant City, through its agents, stated that "the domestic incident further evolved into/contained elements of an Emotionally Disturbed Person (EDP) and a person with medical needs." Exhibit A to Amended Complaint at p. 2, ¶ 6; *see also* Amended Complaint ¶¶ 2, 67. In similar factual circumstance, this District found that ADA accommodations were still required when the police responded to plaintiff's decedent's home to perform a "safety check" upon receiving a 911 call that the family's "lives were in danger." *Town of Thomaston*, 2020 WL 5849529, at *1. Same as in the present case, the *Thomaston* court relied upon plaintiff's allegations that the decedent's mental health issue was well documented, and that the decedent's mother often called the police when he had mental health crises. *Id.* at *1-*2.

In sum, Ms. Jaddo pled sufficient facts to make out a cognizable claim under the ADA and RA. Taking the allegations in the Amended Complaint as true, Defendant City knew of Mr. Barrier's mental health history; that the officers were responding to a psychiatric crisis on the day of the incident; and that Ms. Jaddo pleaded the police for medical assistance for her son given that all of the mental health crisis centers were closed at non-business hours. *See* Amended Complaint ¶¶ 46-52, 60. Moreover, between the police's first arrival at Mr. Barrier's home at 11:45 pm and their return to the home to arrest him at 1:28 am, the City had "approximately one hour and forty minutes after Ms. Jaddo had initially told Defendant police officers that her son was in a psychiatric crisis and needed urgent medical care." *Id.* ¶ 79. Despite having notice of Mr. Barrier's condition and having ample time, the City failed to provide or arrange necessary accommodations under the ADA and RA and instead arrived at Mr. Barrier's home with intent to arrest him, "with their guns drawn and pointed." *Id.* ¶¶ 60, 78. The police officers made a deliberate choice to arrest Mr. Barrier

and treat him like a criminal, instead of taking him to a hospital, because of their perception that he was psychotic. *Id.* ¶ 100. Under these facts, the ADA and RA claims must survive the pre-Answer Motion to Dismiss.

> *b.* Plaintiff CLRP has organizational standing to seek injunctive and declaratory relief to rectify Defendant's unconstitutional and unlawful actions.

In their renewed Rule 12(b) Motion, Defendants also seek to dismiss the claim brought by Plaintiff CLRP in its entirety for its purported lack of standing. Deft. First Mem. of Law, Dkt. No. 19 at 5-12. Taking into consideration the arguments raised in Defendants' original 12(b) Motion, the Amended Complaint clarified that CLRP is asserting standing under the organizational standing theory only, as opposed to the associational standing theory. *See* Amended Complaint ¶¶ 31, 197, 208. In seeking to challenge CLRP's standing again, Defendants fail to address Second Circuit precedents that granted organizational standing to such agencies whose mission was obstructed and resources diverted because of defendants' unlawful actions.

To establish organizational standing, an organization should plead that it has suffered an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Irish Gay & Lesbian Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998). An organization is directly injured if it has diverted the organization's resources to identify or counteract defendant's unlawful action or if defendant's actions frustrated the organization's mission. *Id.* Notably, the Second Circuit has repeatedly emphasized that "only a perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Centro de la Centro De La. Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *N.Y. State Citizens' Coal. for Children v. Velez*, 629 Fed.

Appx. 92, 94 (2d Cir. 2015); *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993).

Consistently, in *Nnebe v. Daus,* the Second Circuit reversed the District Court's decision that a plaintiff did not have organizational standing, when the evidence supplied by that organizational plaintiff, "while scant, [was] not abstract." *Nnebe v. Daus*, 644 F.3d 147, 156-57 (2d Cir. 2011) (internal citation omitted). In that case, NYTWA, a nonprofit organization that sought to improve taxicab drivers' working conditions, was held to have organizational standing to bring civil rights action on its own behalf against a municipality, alleging that the municipality's policy of suspending drivers' taxicab licenses upon notification of arrest violated the Federal Constitution. Specifically, NYTWA established organizational standing by alleging to have diverted resources in assisting its members who faced summary suspensions by providing counseling, explaining suspension rules to drivers, and assisting the drivers in obtaining attorneys. The court also found that the organization would sustain a direct injury even if it only represented a few suspended drivers a year, most notably stating that:

> Even if only a few suspended drivers are counseled by NYTWA in a year, there is some perceptible opportunity cost expended by the Alliance because the expenditure of resources that could be spent on other activities constitutes far more than simply a setback to [NYTWA's] abstract social interests. Furthermore, the Supreme Court has stated that so long as the economic effect on an organization is real, the organization does not lose standing simply because the proximate cause of that economic injury is the organization's noneconomic interest in encouraging a particular policy preference.

*Id.* at 157 (internal citations omitted).

Here, Defendant City's actions have forced CLRP to divert its limited resources as a nonprofit organization to counteract the City's unconstitutional and unlawful acts against disabled Stamford residents during arrest. Amended Complaint ¶¶ 207-219. Defendant City's policy of criminalizing and mistreating mentally ill arrestees or detainees "frustrates CLRP's own goals,

projects, and mission to protect the civil rights of persons with psychiatric disabilities." *Id.* ¶ 208. As such, CLRP spends "significant organizational resources and funds" to counteract such policy, "when such resources and funds could have been spent on other activities including, but not limited to, providing legal assistance to clients in non-custodial contexts." *Id.* In addition, "CLRP must expend substantial resources in lobbying efforts specifically intended to reduce the number of individuals living with psychiatric disabilities who are mistreated and brutalized by the police." *Id.* ¶ 209. In similar circumstances, Second Circuit granted standing to organizations that "expended staff time and other resources to investigate and respond to Defendant City's discriminatory … practices, which diverted resources away from other activities" *Fair Hous. Just. Ctr., Inc. v. Edgewater Park Owners Coop., Inc.*, 2012 WL 762323, at *5 (S.D.N.Y. Mar. 8, 2012); *see also Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014) (granting organization standing when investigation into defendant's acts diverted organization's resources from other activities); *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 164 (E.D.N.Y. 2019) (holding that "an alleged drain on or diversion of an organization's resources alone may suffice to constitute an injury in fact").

In the Amended Complaint, CLRP alleged in abundant detail how it has acted and will continue to act to repair the harm caused by Defendants' unconstitutional and unlawful acts. For example, CLRP "has diverted staff time and resources away from providing legal aid to patients in psychiatric facilities to attending legislative notice-and-comment hearing regarding police interactions with individuals with psychiatric disabilities, drafting testimony, attending and testifying at legislative hearings, raising public awareness, and providing guidance as members of the Sandy Hook Advisory Commission and the Board of Directors of the Connecticut Alliance to Benefit Law Enforcement (CABLE)—a coalition of police, mental health professionals, educators,

and families living with mental health conditions." Amended Complaint ¶ 209. CLRP also expends resources on "lobbying for bills that would counteract the Defendants' actions." *Id.* ¶ 210. Finally, "Defendants' unlawful treatment of mentally disabled individuals has also forced CLRP to provide legal aid referral services to clients who were unlawfully arrested, humiliated, and/or brutalized by police when they needed urgent psychiatric care." *Id.* ¶ 217.

Hence, CLRP has pleaded sufficient facts to allege that it diverted, and will continue to divert, its limited resources to counteract Defendant City's unlawful actions that continue to occur on a routine basis. *Id.* ¶¶ 207, 209, 218-19. This Court should reject Defendants' attempt to mischaracterize CLRP's claim as solely relying upon Mr. Barrier's death, so as to deny future harm meriting injunctive relief. CLRP specifically pleads that it is suffering past, present, and continuous injury by Defendants' routine conduct, as "Defendant City's policy has impeded, and will continue to impede, CLRP's ability to carry out its goals and responsibilities." *Id.* ¶ 218. Defendants' treatment of Mr. Barrier merely serves as one example of how Defendants' unlawful conduct causes grave injury to CLRP's mission to protect and advocate for Stamford citizens with psychiatric or mental health disabilities. *Id.* ¶ 200. Any lack of clarity Defendants assert regarding if there is future injury to CLRP should be resolved by the added allegations in the Amended Complaint, including: "As Defendant City continues to engage in recurrent wrongful acts against individuals with mental disabilities, the anticipated expenditures and ensuing harm to CLRP's activities are currently impending." *Id.* ¶ 218.

Finally, Defendants' Memorandum of Law claims that CLRP has not demonstrated that "the Defendant City's conduct or policy interferes with or burdens CLRP's ability to carry out its usual activities." Deft. First Mem. of Law, Dkt. No. 19 at 11. In other words, Defendants assert that to establish an injury-in-fact, the injury has to be "sufficiently distinct from the general

mission of the organization at issue." However, in *DeDandrade v. U.S. Dep't of Homeland Sec,* the case Defendants rely upon, the court found that the injury need not be different from the organization's mission if the "advocacy organizations expended additional resources of the type they normally provided [in order to] challeng[e] alleged unlawful conduct." *DeDandrade v. U.S. Dep't of Homeland Sec*, 367 F. Supp. 3d 174, 182 (S.D.N.Y. 2019).

Here, as described above, CLRP has spent additional resources on lobbying and legislative efforts because of Defendants' conduct. Thus, it meets the standard for organizational standing described in *De Dandrade*, where the court specifically stated: "It is of no consequence that part of the diversion of resources is to … activities that are already part of the organization's usual services" if it needs to spend more resources to counteract defendants' unlawful conduct. *Id.*; *see also Centro*, 868 F.3d at 111 (upholding organizational standing when a nonprofit organization spent money to combat defendant's activity, making it more costly to carry out certain activities already part of its mission).

Moreover, the Amended Complaint alleges that Defendant City's conduct and policies interfere with and burden CLRP's ability to carry out its usual activities of providing "legal aid services to persons receiving treatment and services at mental health facilities and/or persons who require employment or housing benefits." Amended Complaint ¶ 206. Instead, CLRP needs to spend "limited resources including staff time toward lobbying efforts and referral services for arrestees with mental disabilities." *Id.* ¶ 207. *See Ragin*, 6 F.3d at 905 (finding that housing entity's performance of "regular tasks" was perceptibly impaired by need to devote resources to identify and counteract defendants' racially discriminatory advertising). As CLRP diverts its resources from its usual activities to avert or remedy Stamford Police Department's actions or policies causing harm to its clientele, this case is clearly distinguishable from cases Defendants cite such

as *De Dandrade*, 367 F. Supp. 3d at 182, or *Ctr. for Food Safety v. Price*, 2018 WL 4356730, at *5 (S.D.N.Y. Sept. 12, 2018) (finding that plaintiffs simply failed to allege that their organizations were compelled to expend resources to counteract or remedy harm imposed by defendants' conduct).

Finally, public policy strongly favors this Honorable Court granting CLRP organizational standing to join this action. Notably, Congress has granted standing under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act") for certain agencies and nonprofit organizations to represent the collective interests of individuals with disabilities. 42 U.S.C. § 10801 *et seq.* In doing so, Congress recognized that "individuals with mental illness are vulnerable to abuse and serious injury" and that existing mechanisms for monitoring the treatment of individuals with mental illness were "inadequate." *Id.* § 10801(a)(1), (a)(4). It is criticial to protect CLRP's right and interest in protecting the rights of mentally disabled individuals who are vulnerable and unable to assert their own rights because of their disabilities.

It is noteworthy that only after the Original Complaint seeking injunctive relief was filed, which was well over a year after the events in question, the Stamford Police Department announced *in sequitur* that it is instituting reforms to incorporate a police mental health collaboration, including: 1) ongoing mental health crisis response training, 2) a mental health crisis adaptive patrol response program, and 3) embedding of a social worker within the Stamford Police Department. Amended Complaint ¶ 223. Moreover, the Defendant City "announced that the Stamford Police Department has partnered with F.S. DuBois Center, one of the mental health crisis centers where Plaintiff CLRP services patients." *Id.* The timing of the announced reforms, after CLRP's claim for injunctive relief, supports the proposition that the Stamford Police Department was thereby motivated to institute these required reforms. Moreover, CLRP serves individuals in

mental health crisis, fortuitously, at the very crisis center that the Stamford police is now choosing to partner with, proposing it as an organization uniquely suited for standing for injunctive relief in this lawsuit. As Amended Complaint makes clear, these "preliminary changes do not rectify the ways in which Defendant City's unlawful action continues to violate the rights of Stamford's citizens with mental disabilities including clients and prospective clients of CLRP." Amended Complaint ¶ 224. CLRP's pursuit for injunctive relief remains of issue.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court denies Defendants' Motion to Strike and Motion for More Definite Statement; that the Court grants Plaintiffs' Cross-Motion to consolidate those Motions with Defendants' renewed Motion to Dismiss; and that the Court denies Defendants' Motion to Dismiss.


Dated: New York, New York
       July 20, 2021
                                   By: /s/ *Alan Fuchsberg*
                                   Alan L. Fuchsberg
                                   The Jacob D. Fuchsberg Law Firm, LLP
                                   3 Park Avenue, Suite 3700
                                   New York, New York 10016
                                   (212) 869-3500

                                   *Attorneys for Plaintiffs*


Dated: Bridgeport, Connecticut
       July 20, 2021
                                     By: /s/ *Kelly A. Fitzpatrick*
                                   Kelly A. Fitzpatrick
                                   KOSKOFF, KOSKOFF & BIEDER PC
                                   350 Fairfield Avenue
                                   Bridgeport, CT 06604
                                   (203) 336-4421

                                   *Attorneys for Plaintiffs*

<u>On the brief:</u>
Jaehyun Oh and Maya Pendergrass[15]
The Jacob D. Fuchsberg Law Firm, LLP

---

[15] Said counsel are attorneys admitted to practice law in other jurisdictions. Jaehyun Oh has applied for and awaits admission to this District, and Maya Pendergrass is awaiting to satisfy the requirements for admission.