**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

VALERIE JADDO,
*Plaintiff*,

v.

MICHAEL CONNELLY, *et al.*,
*Defendants*.

Case No. 3:21-cv-350 (OAW)

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Valerie Jaddo, individually and as Administrator of the Estate of her son, Steven Barrier, Jr., brings this action against the City of Stamford (the "City") and several Stamford Police Department (SPD) employees (Sergeant Michael Connelly ("M. Connelly"), Officer Rhett Connelly ("R. Connelly"), Officer Troy C. Judge, and Lieutenant Douglas R. Dieso) ("individual defendants"), after Barrier passed away while in police custody. Plaintiff alleges that Defendants refused to provide Barrier with needed medical care during his arrest. She seeks relief under the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), several provisions of the Connecticut State Constitution, and several state statutes. Defendants move for summary judgment against Plaintiff on all counts. ECF Nos. 105, 110, 114 (hereinafter the "Motion"). The court has reviewed Defendants' Motion, Plaintiff's response thereto, Pl.'s Mem. in Opp., ECF No. 119 (hereinafter "Opp."), Defendants' reply, Defs.' Reply, ECF No. 124 (hereinafter "Reply"), as well as the record in this case. And while the passing of an individual in (or recently in) police custody always brings justifiably close analysis and examination, in this instance, after careful review and for the foregoing reasons, and also with the court's condolences, Defendants' motion is **GRANTED.**

## I. BACKGROUND[1]

The facts set forth below are taken primarily from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise stated. Pursuant to District of Connecticut Local Rule 56(a)1, each material fact set forth in the moving party's Local Rule 56(a)1 statement and supported by the evidence "will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement" of the non-moving party. D. Conn. L. Civ. R. 56(a)1. Therefore, where Plaintiff "fails to appropriately deny material facts set forth" in Defendants' Rule 56(a)(1) statement, "those facts are deemed admitted." *Barone v. Judicial Branch of Conn.*, No. 3:17-cv-644 (VAB), 2019 WL 7283383, at *11 (D. Conn. Dec. 27, 2019) (citation modified).

### A. Call to the Emergency Communications Center ("ECC")

This action arose from events that took place on October 22, 2019. Defs.' Local Rule 56(a)1 Statement of Undisputed Facts ¶ 1, ECF No. 110 (hereinafter "Defs.' SOF"). In the evening of October 22, 2019, the ECC of the City of Stamford received a 911 call from Barrier's home. *Id.* The caller—Barrier's sister, Shanika Aarons—reported that she "need[ed]" police there, as Barrier "is a menace to society . . . punched [her] in the face, hit [her] in [her] face, hit [her] with a broom, everything," and that Barrier needed "to be in jail." *Id.* ¶ 2. Aarons initially said she was not hurt but later added that she was not sure if she was injured, as she was "shaking." *Id.* ¶ 3. Throughout the call, Aaron was heard talking to another person in the house, saying that Barrier was "not mental," and that he knew "what he's doing." *Id.* ¶ 4. The parties dispute as to whether the call was dispatched

[1] All pagination herein is as generated by the court's CM/ECF system, and from any document therein.

as a “domestic assault call,” and whether Defendants knew that they were responding to an emotionally disturbed individual or a person experiencing a mental health crisis.[2] *Id.* ¶¶ 5, 7. Body-warn camera (BWC) footage shows that police officers were told that Barrier was “schizophrenic.” *Id.*; Opp. Ex. 2 at 1:19–1:22.

**B. <u>SPD Officers Respond to the Scene</u>**

The police responded at approximately 11:40 pm on October 22, 2019, but Barrier had already left the scene. *Id.* ¶ 9. Officers Nucera and Ryan Lee spoke to Aarons and Jaddo. *Id.* ¶ 10. M. Connelly was present for some of those interviews. *Id.* ¶ 11. Plaintiff alleges that Plaintiff informed both Lee and Nucera that Barrier was a “psychiatric patient,” and “explained in specific detail Mr. Barrier’s altered mental status and its effect on his behavior.” *Id.* ¶ 12. Defendants attest that Aarons told them that Barrier “needed to be in jail; that she wanted to press charges against him,” and that Barrier did not need to go to a hospital, “because he was fine.” *Id.* ¶ 15; ECF No. 105, Ex. 1 at 10:34–10:50. Plaintiff denies that, instead arguing that Aarons informed Defendants that Barrier was on “drugs he cannot control,” referring to his psychiatric medication. Opp. ¶ 15. Aarons also said that:

> “And that’s when I jumped in then, then that’s when it started because he wasn’t gonna do me like her. I, I was gonna defend myself and that’s . . . when he started fighting. But I want to press charges because he deserves to be locked up man. Enough is enough. He’s been doing this for years and years and they . . . just send him to the hospital. That’s not the problem. He knows what he’s doing . . .”

ECF No. 105, Ex. 1 at 10:51–11:16; Defs.’ SOF ¶ 17.

---

[2] Plaintiff alleges that SPD knew that Barrier had a schizophrenia diagnosis, as they had responded to “several incidents where Mr. Barrier was acting in an agitated manner due to his emotional disturbance,” and “engaged” a medical doctor if available or sent Barrier to a hospital. Opp. at 37–38.

Aarons gave the police a written statement, stating that Barrier "punched and kicked her," and describing Barrier as "very abusive and aggressive." *Id.* at 19. Defendants concluded that probable cause was established that a domestic assault had occurred, based on Aaron's statement and the officer's investigation. *Id.* ¶ 20. Officers left at 12:38 am on October 23, 2019. Opp. ¶ 23. Later, Aarons and dispatch informed officers that Barrier had returned to the home. Defs.' SOF ¶¶ 24–25. M. Connelly approached the home but was told that Barrier was "running through the back yard." *Id.* ¶ 27.

### C. <u>Foot Chase</u>

Officers ran after Barrier to apprehend him. *Id.* ¶ 28. M. Connelly attested that he ran after Barrier, and saw him "running fast, climbing over two tall fences," before he lost sight of him. *Id.* ¶ 30. R. and M. Connelly saw Barrier hiding in shrubbery by the side of a large fence by a Home Depot. *Id.* ¶ 31. Barrier started running again, upon seeing the officers. *Id.* ¶ 32. Officers described Barrier as a "fast runner," and claimed to see him "jump over logs and rocks and climb fences." *Id.* ¶ 33. R. Connelly notified other police units where Barrier appeared to be headed. *Id.* ¶ 34. Plaintiff objects to (but does not deny) these facts insofar as there is no supporting BWC footage, as M. Connelly and R. Connelly did not have their BWC turned on during this time.[3] Opp. ¶ 30. In so doing,

[3] Plaintiff uses this "objection" numerous times. *See* 30–33, 40–41, 43, 49–51, 54–57, 59, 61, 64, 66–67, 71–73, 92, 95, 102, 107, 125–126, 135, 139, 145–146, 149. She neither admits nor denies such facts—she merely objects to them, arguing that Defendants' affidavits do not support them because there is no corresponding BWC footage. However, Fed. R. Civ. P. 56(c) only permits objections based on the *admissibility* of evidence. *Ricci v. Destefano*, No. 4-cv-1109 (JBA), 2006 WL 2666081, at *2 (D. Conn. Sept. 15, 2006) ("party's responsive statement to an opponent's Rule 56(a) Statement is not a vehicle for analyzing the admissibility of the opponent's evidence or criticizing the opponent's characterizations of that evidence); *Cummings v. Bradley*, No. 11-cv-751 (AVC), 2013 WL 1149985, at *1 (D. Conn. Mar. 19, 2013) ("A party may object that the material cited [by the party's opponent] to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Plaintiff does not challenge the *admissibility* of the facts to which she objects, but merely opines that "the materials cited [by Defendants] do not establish the absence of a genuine dispute," *see, e.g.,* Opp. ¶¶ 30–34, even when the challenged materials so cited are *sworn affidavits* (which are among the types of materials specifically mentioned at Fed. R. Civ. P. 56(c)(1)(A) as those which might support a fact being offered as not genuinely in dispute).

Plaintiff seems to argue that there is an appreciable difference between officers not *having* tools such as BWCs (with which they can objectively capture accurate video and audio of an event) and officers' failure to *use* such tools (particularly when BWCs are readily available, and when department policy seems to require their use). *See id.*

Judge heard M. Connelly request additional support and a description of where Barrier was running. *Id.* ¶¶ 36–38. Judge drove to the Home Depot parking lot, exited his vehicle, and ran up a "large, wet, grassy, steep hill . . . above the Home Depot parking lot." *Id.* ¶ 38. The area was not accessible by vehicle and was difficult to climb. *Id.* ¶ 39. Judge attested that he saw Barrier "a short distance away," and he dropped his radio and pulled out his gun. *Id.* ¶¶ 40–42.

**D. <u>Barrier's Apprehension</u>**

Judge "closed the distance," and saw Barrier drop to the ground. *Id.* ¶ 43. Judge pointed his gun at Barrier, as he did not know if Barrier was armed, and believed Barrier was dangerous. *Id.* ¶¶ 45–47. Judge shined his flashlight at Barrier and saw him lying face down, with his arms tucked underneath him. *Id.* ¶¶ 49–50. Judge told Barrier to show his hands. The parties dispute whether Barrier "did not comply" or "could not comply." *Id.* ¶¶ 50–52; Opp. ¶¶ 50–52. R. Connelly and M. Connelly ran towards Judge's voice. Defs.' SOF ¶ 53. Judge put his knee on Barrier's back for a disputed length of time, while M. Connelly and R. Connelly caught up to Judge. *Id.* ¶¶ 56–59; Opp. ¶¶ 56–59. The parties disagree as to whether there were signs that Barrier was experiencing a mental health crisis during this time. Defs.' SOF ¶¶ 60–61; Opp. ¶¶ 60–61.

R. Connelly and Judge moved Barrier's hands from underneath him and placed him in handcuffs. Defs.' SOF ¶ 62. Officers placed Barrier on his side after he was

handcuffed and patted him down for weapons. *Id.* ¶ 65. R. Connelly and Judge told Barrier to stand up, but he stated that he could not as he was "too tired." *Id.* ¶¶ 68–70. Plaintiff alleges that this indicated that Barrier was in "medical distress." Opp. ¶ 72. Judge and R. Connelly brought Barrier down the hill, and the parties disagree as to whether he was carried or "dragged." *Id.* ¶ 73; Defs.' SOF ¶ 73. When officers brought Barrier down the hill, he was conscious, breathing, and talking. *Id.* ¶ 74. R. Connelly told M. Connelly and Judge that Barrier was breathing and "was all right." *Id.* ¶ 77. M. Connelly instructed R. Connelly and Judge to avoid placing Barrier's face in a pool of water upon setting him down. *Id.* ¶ 81. M. Connelly attests that Barrier was breathing and "appeared fine." *Id.* ¶¶ 82–83. Plaintiff alleges that there was no way to assess Barrier, as he had his hands cuffed behind his back. Opp. ¶ 83.

Barrier stated that he wanted to walk. Defs.' SOF ¶ 84. However, Barrier did not stand, so officers continued to carry him down the hill. *Id.* ¶¶ 84–87. At this point, Barrier was conscious, breathing, and talking. *Id.* ¶ 88. M. Connelly, R. Connelly, and Judge placed Barrier on the ground near the police vehicle. *Id.* ¶¶ 89–90. Barrier was still speaking and conscious throughout this time. *Id.* ¶ 91. It is disputed whether Barrier asked the officers to help him get in the police vehicle. *Id.* ¶ 92, Opp. ¶ 92. After this moment, M. Connelly, R. Connelly, and Judge had no further interaction with Barrier. Defs.' SOF ¶ 93. It took less than three minutes to get to the police vehicle from the top of the hill. *Id.* ¶ 96. Deiso observed that officers were putting Barrier in a police vehicle when he arrived in the Home Depot parking lot. *Id.* ¶ 136.

### E. Barrier's Transport to Detention and Intake

Officer Michael Costello was assigned to transport Barrier to the police station. *Id.* ¶ 100. Barrier talked to Costello while he was starting to drive to the police station, asking Costello to turn on the air conditioning. *Id.* ¶ 105. Costello heard Barrier moving around the vehicle. *Id.* ¶ 106. Plaintiff alleges that Barrier was "moaning in the back seat," and "twisting about like crazy." Opp. ¶ 107.

At about 1:52 am, Costello arrived at SPD. He asked other officers to help him move Barrier from the vehicle. Defs.' SOF ¶ 110. Costello was surprised that Barrier seemed limp. *Id.* ¶ 112. Officers carried Barrier into the holding cell within 15 seconds. *Id.* ¶ 113. Barrier was immediately assessed by Lee. *Id.* ¶ 114. Lee felt a pulse on the left side of Barrier's neck. *Id.* ¶ 115. Lee called dispatch less than 30 seconds after Barrier was placed in a holding cell. *Id.* ¶ 116. Lee and Officer Kilcoyne sat Barrier against a wall. *Id.* ¶ 117. Lee rubbed Barrier's chest to try to make him more alert and observed "shallow movement" near Barrier's stomach and "detected a faint heartbeat." *Id.* ¶ 118. Lee radioed dispatch again, asking for EMS to "step it up," roughly a minute after he last called dispatch. *Id.* ¶ 119.

At 1:57 am, Sergeant Kevin Lynch entered the holding cell and confirmed with other officers that Barrier had a pulse and was breathing. *Id.* ¶¶ 121–22. Lynch then left the cell for a phone call, but upon return spoke to Costello about what had happened during the ride to the jail. *Id.* ¶¶ 123–24. Lynch rubbed Barrier's sternum, calling Barrier's name loudly several times. *Id.* ¶ 124. The parties dispute as to whether Lynch detected a heartbeat and saw Barrier breathing after rubbing Barrier's sternum. *Id.* ¶¶ 125–26; Opp. ¶¶ 125–36. Lynch and Lee sat Barrier more upright and Lynch held Barrier's head back to "better open his airway." Defs.' SOF ¶ 127. The first EMT checked Barrier's

pulse, saying "Got a faint pulse, I think." *Id.* ¶ 129. EMS "subsequently found" that Barrier was not breathing and started CPR, eventually transferring Barrier to Stamford Hospital where he was pronounced dead at 3:10 am. ECF No. 114 at 3.

### F. Plaintiff's Allegations

Plaintiff alleges that SPD should have "engaged a mobile crisis unit, EMS, or an ambulance" when they responded to the call that Barrier had returned to the house. Opp. at 39. Plaintiff also alleges that Barrier was "not combative" when found at the top of the hill. *Id.* Plaintiff alleges that Barrier "moaned, gasped, and pleaded" with officers that he wanted to walk down the hill and asserts that officers should have known Barrier was in a "dire medical condition" because he "did not have muscle tone, was flaccid, and was unable to follow commands." *Id.* at 42.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue as to any material fact and it is clear that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

The moving party has the burden of showing that no genuine issue of material fact exists. "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). If the moving party meets its burden, the non-moving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To defeat a motion for summary judgment, the non-moving party must demonstrate there is a genuine dispute of material fact for trial. He must offer "significant, probative evidence on which a reasonable fact-finder could decide" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256–57. He may not "merely rely upon the allegations contained in the pleadings that raise no more than 'some metaphysical doubt as to the material facts.'" *Anderson v. Romano*, 2010 U.S. Dist. LEXIS 120395, at *7–*8 (S.D.N.Y. Oct. 22, 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986)). Summary judgment is appropriate if the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

### A. Abandoned Claims

Plaintiff stated that she did "not oppose the dismissal of the First Count (Fourth Amendment Claim), Third Count (Equal Protection Claim), and Sixth Count (State Constitutional Claims). Opp. at 5. In their motion for summary judgment, Defendants argued that they were entitled to summary judgment on these claims. *See* Motion at 5–10, 20–24. Plaintiff's opposition does not provide any argumentation or evidence in support of these claims and affirmatively abandons them. Opp. at 5. "[W]hen a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that

summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195–96 (2d Cir. 2014)).

Therefore, the court deems abandoned Plaintiff's Fourth Amendment, Equal Protection, and state constitutional claims, and thus grants Defendants' motion as to those claims. *Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013); *see also Kasprzycki v. DiCarlo*, 584 F. Supp. 2d 470, 478 (D. Conn. 2008) ("Federal Courts may deem a claim abandoned when a party moves of summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way") (citation modified).

### B. <u>Fourteenth Amendment Due Process Claim</u>

Plaintiff alleges that the individual defendants were deliberately indifferent to Barrier's "urgent medical and psychiatric" needs, and that they were "on notice that Mr. Barrier needed urgent psychiatric care," yet they did not provide it, in violation of the Fourteenth Amendment. ECF No. 51 (Second Amend. Compl. ("SAC")) ¶¶ 84, 139.

To prevail on a claim for deliberate indifference under the Fourteenth Amendment, the plaintiff must establish two prongs. *Valdiviezo v. Boyer*, 752 Fed. Appx. 29, 32 (2d Cir. 2018). Plaintiff must demonstrate that the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process" to establish the first prong. *Id.* (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2015)). To establish the second prong, plaintiff "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health

or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (emphasis in original).

Even presuming that Plaintiff can establish the first prong, Plaintiff fails to establish the second.[4] The record establishes that the individual defendants stopped several times while taking Barrier down the hill and engaged—albeit at times with crude language—in a back-and-forth conversation with Barrier at several times. Barrier actively responded to the individual defendants' questions. Defs.' SOF ¶ 69, 70, 75, 79, 85, 86, 96; ECF No. 105, Ex. 2 at 0.47; 0:55; 1:31; 2:05–2:12); *id.* 1:10–4:08; Ex. F ¶¶ 26, 29, 33, 35, 39.

Based on this record, there is nothing indicating that the individual officers should have known that Barrier needed immediate medical treatment. *Kelsey v. City of N.Y.*, 306 Fed. Appx. 700, 702 (2d Cir. 2009) (affirming grant of summary judgment on deliberate indifference claim; concluding that "although the steps taken by the police were insufficient in hindsight . . . there was 'no reasonable basis for a jury to find that the defendant officers exhibited deliberate indifference'"). Plaintiff points to M. Connelly's BWC, which shows Barrier saying he was tired and asking for help as evidence that the individual defendants should have known that Barrier was in serious medical distress. Opp. at 22, 24. However, his statements that he was tired and requesting help are insufficient, as there is nothing in the record demonstrating that Barrier was not breathing

[4] The individual defendants named in this action did not have contact with Barrier after he was left near the police vehicle. Defs.' SOF ¶ 93. Accordingly, Plaintiff's claims regarding the officers who brought Barrier to a holding cell, removed him from the police car, and who interacted with him at the lockup facility are not properly before this court. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official"); *McWilliams v. Monroe*, No. 23-cv-3414, 2023 WL 4351229, at *6 (S.D.N.Y. July 4, 2023) (noting that the plaintiff must name each individual they seek to hold liable in the caption of the complaint). Further, Plaintiff also does not assert any arguments related to what happened during Barrier's transport and intake into the lockup facility. Opp. at 16–22.

at any point in his interactions with the individual defendants, or otherwise exhibiting signs of serious medical distress. *See Garcia v. Dutchess Cnty.*, 43 F. Supp. 3d 281, 300 (S.D.N.Y. 2014) (noting that summary judgment was improper when officers were notified that pretrial detainee's back "was not rising and falling," and that he was not breathing "for some period of time," after which none of the officers "provided or arranged for medical care, after being "put on notice" that the pretrial detainee was not breathing); *Lin v. City of N.Y.*, No 16-cv-2270, 2018 WL 4119207, at *5 (E.D.N.Y. Aug. 29, 2018) (finding that officers were not deliberately indifferent to detainee when they "made efforts to communicate," "examined [Plaintiff] when there was a potential cause for concern, and eventually transported him to the hospital"). Here, the BWC footage shows that Defendants stopped several times to confirm Barrier was breathing, and at several points Barrier was speaking to the individual defendants. *Id.*; ECF No. 105, Ex. 2 at 1:10–4:08. At one point, Mr. Barrier even indicated that he would prefer to walk of his own volition, but when he did not stand upon being given a moment to do so, Defendants resumed carrying him down the hill. On these undisputed facts, Plaintiff has not demonstrated that the individual defendants knew, or should have known, that failing to provide medical treatment would pose a substantial risk to Barrier's health, *even if* the court were to disregard Defendants' allegations regarding portions of their pursuit of Mr. Barrier which they failed to record because they did not engage their BWCs. Plaintiff "objects" to such allegations (that Mr. Barrier was seen "running fast" and "climbing over two tall fences," Opp. ¶ 30, and that officers saw him "jump over logs and rocks," *id.* ¶ 33). Ultimately, Plaintiff admits that, during heavy, active rain, Mr. Barrier eventually was located atop a "large, wet, grassy, steep hill," *id.* ¶ 38, that he was conscious and verbally responsive to

officers upon apprehension, *id.* ¶¶ 68–70, and that he was "conscious, breathing, and talking" when officers began to carry him down that hill, *id.* ¶ 74. From the time Mr. Barrier was taken into custody in such condition and carried down a hill to a police patrol vehicle, there is available BWC video from multiple angles.[5] Having carefully considered the uncontroverted facts, the court cannot find that there remains a dispute over any facts *material* to the summary judgment determination regarding deliberate indifference (again, *even if* the court were to disregard the claims as to Mr. Barrier's energetic efforts to evade police apprehension). *Charles*, 925 F.3d at 87 (holding that deliberate indifference is a reckless failure to act upon excessive risks to a plaintiff's health or safety about which the defendants knew or should have known, beyond mere negligence).

Accordingly, Defendants are entitled to summary judgment on this claim. As such, the court does not address the parties' arguments regarding qualified immunity.

**C. <u>ADA and RA</u>**

Plaintiff alleges that the City of Stamford violated the ADA and RA (1) by wrongfully arresting Barrier because they misperceived the effects of his schizophrenia as criminal activity and (2) by failing to provide reasonable accommodation. SAC ¶¶ 158–59, 161–62, 165. The court will address each seriatim.

To establish a prima facie case of discrimination under the ADA and RA, Plaintiff must show: (1) that he is a person with a disability within the meaning of the ADA; (2) that his employer is subject to the ADA and had notice of Plaintiff's disability; (3) that with or

[5] To Plaintiff's point about the importance of BWC video (and its absence, when it seemingly *could have* been recorded), the *available* video in this case clearly resulted in Plaintiff's admission of certain facts critically material to the summary judgment determination. Separately, the court notes that the City of Stamford publicly published "body worn camera videos and 911 recordings within the limits of the law for public viewing," available at https://www.stamfordct.gov/government/boards-commissions/police-commission/steven-barrier-timeline (last visited Sept. 4, 2026).

without reasonable accommodation, he was qualified to perform the essential functions of the job at issue; and (4) that he suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127,134 (2d Cir. 2008). "The Second Circuit has recognized that claims made under the ADA and Rehabilitation Act are so similar that they should be analyzed together." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002). The RA also requires the plaintiff to show that the defendant receives federal funding. *Henrietta v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

"Courts have . . . recognized two [ADA] claims relating to an arrest: a claim for wrongful arrest based on the disability and not on any criminal activity, and a claim for a proper arrest but where officers failed to accommodate a disability during the investigation or arrest, thus causing the suspect "to suffer greater injury or indignity than other arrestees." *Scott v. Lazure*, No. 3:19-cv-713 (VAB), 2020 WL 2615502, at *11 (D. Conn. May 22, 2020). A wrongful-arrest ADA claim arises where, for example, a police officer mistakes a stroke survivor's slurred speech for intoxication and arrests the individual for driving under the influence. *Kew v. Town of Northfield*, No. 5:19-cv-78, 2023 WL 4172741, at *9 (D. Vt. Apr. 17, 2023), *opinion vacated in part on reconsideration*, 681 F. Supp. 3d 247 (D. Vt. 2023).

The court presumes, without deciding, that Barrier is a person with a disability within the meaning of the ADA. "The Second Circuit has not addressed the issue of whether an arrest itself is a program, service or activity covered by the ADA." *Scott*, 2020

WL 2615502, at *11 (citation modified). For the purposes of this motion for summary judgment, the court presumes that the ADA is applicable.[6]

Turning first to Plaintiff's argument that the City violated the ADA and RA by wrongfully arresting Barrier because they misperceived the effects of his schizophrenia as criminal activity, the record is clearly dispositive. The officers responded to the 911 call from Aarons, who reported that Barrier had assaulted her and wanted to press charges. ECF No. 105, Ex. 1 ("911 Call Audio") to Ex. A at 0:04-1:07; Ex. B ¶ 7. Whether the officers were informed as to his psychiatric state is irrelevant, as the officers were advised that they were responding to an assault, and Plaintiff points to no evidence in the record showing that the officers misperceived Barrier's schizophrenia as criminal activity. Rather, the records reflects that the officers were apprehending Barrier because of his alleged assault against Aarons—not any misperceived effect of his schizophrenia. *See Scott*, 2020 WL 2615502, at *11 (concluding that where the plaintiff fit the description from the reported crime, the arrest was proper, and there was no claim for wrongful arrest under the ADA); *see also* ECF No. 105, Ex. E ¶ 8; ECF No. 105, Ex. 1 at 10:35, 12:37, 12:05–12:12, 19:25; Ex. C ¶ 7.

Turning next to Plaintiff's claim that the City failed to provide reasonable accommodation, in violation of the ADA and RA, the record is also clear.

"Under the ADA, law enforcement officers have a duty to provide arrestees who are disabled with reasonable accommodations once an arrest of a disabled person had been accomplished." *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273–74 (D.

[6] *Reyes v. Town of Thomaston*, No. 18-cv-831 (JBA), 2020 WL 5849529, at *3 n.1 (D. Conn. Sept. 30, 2020) (discussing circuit split on whether the ADA applies to arrests).

Conn. 2013) (citation modified). "In the context of an arrest . . ., a defendant may violate these statutes by failing to transport an arrestee in a safe and appropriate manner." *Morales v. City of N.Y.*, No. 13-cv-7667, 2016 WL 4718189, at *8 (S.D.N.Y. Sept. 7, 2016) (citation modified).

Here, Plaintiff "identifies no injury or indignity he suffered that would not have been suffered by any arrestee who was actively . . . attempting to flee." *Scott*, 2020 WL 2615502, at *11 (concluding plaintiff, who suffered from "schizoaffective disorder and post-traumatic stress disorder," failed to allege sufficient facts to support a failure to accommodate claim under the ADA). Plaintiff points towards the SPD's absence of a written policy regarding mental illnesses and the officers' crude remarks and gestures, as shown on BWC footage, as evidence showing a failure to reasonably accommodate Barrier. Opp. at 34–35; ECF No. 105, Ex. 2 at 0:10–2:23, 2:53–3:20. However, that is insufficient, as Plaintiff fails to show how Barrier was treated differently from any other person who had fled from law enforcement. *See Scott*, 2020 WL 2615502, at *11.

Accordingly, Defendants are entitled to summary judgment on these claims.

**D. <u>State Law Claims</u>**

Plaintiff brought several state law claims against Defendants for wrongful death; negligence; and negligent hiring, training, retention, and supervision. SAC ¶¶ 188–203.

The court, having dismissed all federal causes of action, declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 123 (2d Cir. 2023)

("after properly granting summary judgment on the federal claims, the District Court had discretion not to exercise supplemental jurisdiction over any remaining state law claims") (citation modified); *Ciliberti v. Int'l Bhd. of Elec. Workers Loc. 3*, No. 8-cv-4262, 2012 WL 2861003, at *13 (E.D.N.Y. July 10, 2012) (declining to exercise supplemental jurisdiction over plaintiff's state law claims, as the court granted defendant's motion for summary judgment as to the only federal claim).

## IV. CONCLUSION

For the reasons discussed herein, and with the court's repeated condolences as regarding the loss of life at the center of this matter, the court hereby **GRANTS** Defendants' motion for summary judgment **(ECF No. 105)** as to Plaintiff's claims under the Fourteenth Amendment, ADA, and RA. Additionally, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims. The Clerk of Court is asked to please enter judgment consistent with this order and to please close the case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 4th day of September, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE